PRATT, Appellant, vs. THE OSHKOSH MATCH COMPANY, Respondent.

*January 11 — February 5, 1895.*

*Corporations: Contract by promoter: Adoption by company: Agency.*

After a firm had contracted to purchase lumber, one of the partners arranged with the vendor that the lumber should be furnished instead to a corporation which was to be organized and was to succeed to the business of the firm. *Held,* that this amounted to an open offer on the part of the vendor, which might be accepted by the corporation after its organization; and the fact that said partner had been a party to the original contract did not prevent him thereafter, as superintendent of the corporation, from accepting such offer on its behalf and making the contract a valid obligation of the corporation.

APPEAL from a judgment of the circuit court for Winnebago county: GEO. W. BURNELL, Circuit Judge. *Reversed.*

The plaintiff was the owner of a sawmill in Oshkosh, and engaged in the manufacture of lumber. A. W. Jones and W. H. Wyman were copartners in trade and business, and engaged in the manufacture and sale of matches at Oshkosh, under the firm name and style of the Oshkosh Match Company. Jones's interest therein was three fifths and Wyman's interest two fifths. On June 13, 1883, Jones, in behalf of Jones and Wyman, ordered of the plaintiff 150,000 feet of boards of various lengths, and six, eight, and ten inches wide, at $13 per thousand feet, to be paid for sixty days after the average time that the lumber should all be manufactured. Said lumber was to be piled at a given place near the river, so as to dry readily, and marked " O. M. Co.," and drawn to the planing mill by the plaintiff as wanted by Jones and Wyman. A memorandum of the terms of said sale was made in the plaintiff's order book. On June 23, 1883, Jones requested certain changes to be made in the di-

mensions of the boards, and such changes were made in said order book as so requested.

On August 4, 1883, Jones informed the plaintiff that the defendant corporation was about to be organized, and that he (Jones) would want the boards for the defendant corporation, the same as for the firm; that Jones was to be an officer and manager of the concern; that McMillen & Co. were to be associated with them as stockholders; that by reason of the changes in the business he desired to change the dimensions of the boards. The plaintiff assented to such changes of dimensions, and a new memorandum of sale was entered in the plaintiff's book, in accordance with Jones's instructions.

On August 17 or 18, 1883, the defendant was fully incorporated and organized as the *Oshkosh Match Company*, with a capital stock of 400 shares of $100 each, of which McMillen became the owner of 174 shares, Hollister sixty-three shares, Davis sixty-two shares, Jones sixty shares, and Wyman forty shares. The defendant began doing business October 10, 1883. The machinery, merchandise, tools, and stock of Jones and Wyman were put into the corporation, and credited to them, respectively, in proportion to their interest in the firm. Jones was the superintendent of the defendant. On August 20 or 23, 1883, Jones requested the plaintiff to increase the order to 500,000 feet. The plaintiff was unable to agree to that amount. Jones at that time made inquiry concerning the piling of the lumber, and protested against piling boards sawed for the Diamond Match Company near, upon the ground that the two lots might become mixed, but was assured by the plaintiff that the lumber would be marked distinctly "O. M. Co." on both sides of the piles. Jones then asked the plaintiff when the work would be completed so as to comply with the terms of payment. On August 27 or 30, 1883, Jones requested further variations as to dimensions of boards, and final changes were made in the order.

Pratt vs. The Oshkosh Match Co.

On October 28, 1883, the plaintiff informed Jones that the lumber was cut, piled, and marked, and that payment would be due therefor November 20th, but the plaintiff then consented to wait for payment until December 1, 1883. Jones requested that the lumber be covered and allowed to remain in the yard until spring. After the final alteration of the order, August 27 or 28, 1883, the sawing of the lumber was completed, and the same was piled, marked, and covered as agreed. On November 15, 1883, the said lumber was destroyed by fire.

About September 13, 1889, the plaintiff commenced this action to recover $1,950 as the purchase price of the lumber, principal, and interest from December 1, 1883, basing his right to recover upon the original order for the lumber given by Jones and Wyman, as modified by them, and also upon the alleged fact that within a few days after the organization of the defendant it became the successor of said firm as aforesaid, and had commenced the carrying out and continuing of said business as aforesaid, and that before the plaintiff had commenced manufacturing said lumber the defendant ordered the plaintiff to manufacture said lumber per said agreement as modified. The answer denied any and all liability. At the close of the testimony on the part of the plaintiff the court granted a nonsuit, and from the judgment entered thereon the plaintiff appeals.

For the appellant there was a brief by *Bouck & Hilton,* attorneys, and a separate brief by *Hume, Oellerich & Sweet,* counsel, and the cause was argued orally by *Gabe Bouck* and *John W. Hume.*

For the respondent there was a brief by *Hooper & Hooper,* and oral argument by *Moses Hooper.*

CASSODAY, J. The evidence tends to prove the facts of which a summary is given in the foregoing statement. The question here presented is whether those facts were sufficient to take the case to the jury.

The theory upon which the nonsuit was granted, it would seem, is to the effect that the contract, as originally made and sued upon, was between the plaintiff and Jones and Wyman, and that Jones, as agent of the old firm and superintendent of the defendant, could not, by his own volition and his own act, transfer or assign that contract to the defendant so as to make it binding upon and enforceable against the defendant. In other words, that he could not act as agent for the sellers and the purchaser at the same time and in the same transaction. We cannot say, as a matter of law, that the case is open to such objection. It is true the order for the lumber was originally given by Jones and Wyman. They were promoters of the defendant corporation, and the change in the dimensions of the lumber agreed upon by Jones and the plaintiff, August 4, 1883, was for the benefit of the proposed corporation. The business of the proposed corporation, it would seem, was to be, and in fact became, substantially of the same general character as had previously been conducted by Jones and Wyman.

It is true a corporation is not responsible for acts performed or contracts entered into, before it came into existence, by promoters or other persons assuming to bind the company in advance. 1 Morawetz, Priv. Corp. § 547; Mechem, Agency, § 75. "A corporation may, however, make itself responsible for such acts and contracts by subsequently adopting them. The liability of the corporation, under these circumstances, does not rest upon a supposed agency of the promoters and a ratification of their acts, but upon the immediate and voluntary act of the company." 1 Morawetz, Priv. Corp. § 548. Such an agreement with the promoters usually constitutes an open offer, which may be accepted by the corporation after it is formed. *Ibid.* If the contract is within the corporate powers of the corporation, the corporation may, when organized, expressly *or impliedly* assume the responsibility of the same, and thus make it a valid obligation of the corporation. Mechem, Agency,

§ 75. "The right of the agents of a corporation to adopt an agreement originally made by its promoters depends upon the purposes of the company and the nature of the agreement. If the agreement appears to be a reasonable means of carrying out any of the company's authorized purposes, the usual agents of the company have implied authority to adopt it; but they have no authority to adopt it under any other circumstances." 1 Morawetz, Priv. Corp. § 549.

As indicated, the contract originally existing between the plaintiff and Jones and Wyman was, at the time the defendant was organized and so far as it was concerned, a mere open offer on the part of the plaintiff. The mere fact that Jones had been a party to the original contract did not prevent him, as superintendent and in behalf of the defendant, from accepting such offer and assuming such responsibility. The complaint alleges, in effect, that the plaintiff manufactured the lumber according to the agreement as modified in pursuance of the order of the defendant, and the evidence tends to support the allegation. We are constrained to hold that the evidence in the record is such that the case should have been submitted to the jury.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.