JOHN N. MILLS, receiver of the F. D. Stephens Company,

*v.*

CHARLES B. HENDERSHOT. et al.

[Decided December 23d, 1905.]

1. The directors of an insolvent corporation ordered that corporate property should be transferred to two of their number, who agreed to pay certain creditors. The remaining property was insufficient to pay the corporate debts. The transfer was made in contemplation of the corporation suspending business by reason of its insolvent condition.—*Held*, (1) that the transfers were void under the Corporation act (*P. L. 1896 p. 298 § 64*), and the receiver of the corporation is entitled to recover from each transferee the value of the property received by him; (2) that one of the directors who paid debts of the corporation in consideration of the transfer is entitled to be subrogated to the rights of the creditor to the extent of the debts; (3) that as the transfers were in violation of the duties of the directors and were participated in by all, each is liable for the division of the assets as far as necessary to pay debts.

2. Dividends paid out of the capital of a corporation are recoverable by the receiver of the corporation on its insolvency, so far as may be necessary for the payment of debts.

3. Where the stockholders of an insolvent corporation did not continue business for the purpose of giving an officer a salary, and the officer drawing the salary acted in good faith, and but for a division of opinion between him and other holders of the stock who controlled the corporation the business would have been closed up several years earlier, the receiver of the corporation, seeking to recover assets to pay debts, could not recover the reasonable salary received by the officer after the insolvency of the corporation.

4. Three persons, contemplating the formation of a corporation, en-

tered into an agreement which provided for their salaries as officers of the corporation, and declared that they should be paid from the profits of the business and that the stockholders should be paid dividends before salaries were paid. The certificate of organization did not refer to the agreement, nor was it adopted at the first stockholders' meeting to organize the corporation. The three persons were elected directors and at their meeting adopted a resolution providing that the dividends and salaries should be paid as specified in the agreement.—*Held,* (1) that the receiver of the corporation, seeking to recover assets to pay debts, was not entitled to enforce the agreement for that purpose, and could not recover under it salaries paid from the capital with the acquiescence of the stockholders, and (2) that upon a decree in favor of the receiver for payment of debts the court will not on cross-bills by defendants establish the order of liability between the three defendants based on the agreement, but such rights must be enforced by independent suits between themselves.

5. A stockholder, receiving in good faith dividends declared by the officers of a corporation, without knowledge that they were paid out of the capital instead of the profits, holds them under a constructive trust, and an action by a receiver for their recovery to make assets to pay debts is barred in six years.

6. Equity will not interpose the bar of limitations to prevent a receiver of a corporation from recovering from the directors and officers of the corporation dividends paid to them out of the capital of the corporation, such acts being in fraud of the corporation and its creditors.

7. A person seeking to enforce a contract entered into between himself on the one hand and a decedent and a third person on the other is, under the express provisions of section 4 of the Evidence act (*P. L. 1900 p. 363 § 4*), incompetent to testify as to the transactions between himself and the decedent, resulting in the contract.

8. The contract set up in this case, if proved, established a purely legal and not an equitable liability.

Heard on bill, answers and cross-bills, replication and proofs.

*Mr. Charles Stilwell, Jr.,* for the complainant.

*Mr. Elmer King,* defendant as Stephens' administrator, *pro se.*

*Mr. Joseph Hinchman,* for the defendant Welsh.

*Mr. Albridge C. Smith,* for the defendant Hendershot.

EMERY, V. C.

The receiver of an insolvent corporation files this bill against the defendants, Hendershot, Welsh and Downs, three of the four

stockholders of the company, and the administrator of the only remaining stockholder, F. D. Stephens, who is deceased. For the purpose of paying the debts of the insolvent corporation, a recovery is sought upon three classes of alleged liabilities. Against the two defendants, Hendershot and the administrator of Stephens, the receiver claims the value of goods of the corporation taken by Hendershot and Stephens on a partial division of its assets made between them after its insolvency, and on an agreement between Hendershot, Welsh and Stephens, the only officers and directors of the company, for closing up its business and affairs without legal proceedings. The second claim is a several claim against all of the stockholders, including Downs, for the dividends received by them on their respective stock from the year 1895, it being alleged that the company from that time was insolvent, and that the dividends were paid, not out of the profits, but out of the capital of the company. The third claim of the receiver is against the defendants Hendershot and the administrator of Stephens for a return of their respective salaries since the year 1895. The liability to return the salaries is based partly on an agreement (set out in the bill) made prior to the formation of the company between the three proposed stockholders, Hendershot, Welsh and Stephens, and partly on the claim that since 1895 the business was continued and their salaries drawn with full knowledge of the insolvency of the company, and that it is liable to the extent of this further depletion of its assets by continuing the business instead of closing up its affairs in insolvency or otherwise. The agreement between Stephens, Hendershot and Welsh was made for the purpose of taking over a general plumbing, heating and tinware business previously conducted by Stephens, and of continuing the business, with its good will, as the F. D. Stephens Company, Stephens contributing stock, plant and good will, for which paid-up stock was to be issued to the amount of $8,000, $5,000 on the formation of the company and $3,000 by subsequent purchase. Hendershot and Welsh each paid in $2,500 in cash for their subscriptions to that amount. As to salaries, the agreement provided that Stephens, as secretary and salesman of the company, and Hendershot, as treasurer and bookkeeper, should

each have an annual salary of $1,000, for which each should give his whole time and attention to the business. Welsh, the president, was to have no salary as such officer, but was to be paid for other services. The agreement contained these further provisions, on which the claim of the receiver is based:

"Said salaries are to be paid from the profits of the business. The stockholders are to be paid a dividend of ten per cent. before anything is paid in salaries, and next in preference shall be the salary of C. B. Hendershot before any other salaries are paid."

The certificate of organization did not refer to this agreement, nor did it contain the agreement in reference to the payment of dividends and salaries, nor was the agreement referred to or adopted at the first stockholders' meeting to organize the company. But at the first meeting of the stockholders, Welsh, Hendershot and Stephens were elected the three directors, and at the first directors' meeting a resolution was passed that the dividends and salaries should be as specified in the article of agreement, which was placed in the book of minutes of the company.

Cross-bills are filed by the defendant Stephens' administrator against Hendershot and by defendant Welsh against both Stephens' administrator and Hendershot. The general object of each cross-bill is to establish against Hendershot a primary liability for the claims made by the receiver, or some of them, if established. This primary liability was claimed at the hearing as arising out of the contract relating to the postponement of salaries to dividends, and it is claimed that by reason of this agreement, Hendershot should be held primarily liable for the salaries received, so far as necessary to pay debts, before any decree for the payment of dividends.

The evidence shows the company, whose business had been unprofitable since at least 1897, was in serious financial difficulty in the spring of 1903, and that in August, 1903, the Pierce, Butler & Pierce Company, its largest merchandise creditor, with a claim of about $2,100, was pressing for payment and threatening proceedings in bankruptcy. In consequence of this, and for the purpose of closing up the business without the appointment of a receiver, an arrangement was made by which Hendershot

and Stephens, with the consent of Welsh, the president, and the other director, each took over, at an appraisement or valuation, stock and goods of the company, Hendershot to the amount of $1,846.48 and Stephens to the amount of $1,530.86. Hendershot, under the agreement for division (which was made in August, 1903), was to pay the purchase price for the goods taken by him to the Pierce company on account of their claim, and shortly after making the agreement, and before actually taking the goods or consummating the agreement, Hendershot did, from his own money, pay $1,800 to the Pierce company on account. After this payment disputes arose between the parties in reference to carrying out the agreement, and it was not until September 26th, 1903, that Hendershot took the goods assigned to him, and on that date this receipt, signed by Welsh as president and Stephens as secretary, was put on the inventory or bill of sale of his goods: "Received payment of the F. D. Stephens Company, the same to be applied to account of Pierce, Butler & Pierce Manufacturing Company." Stephens was to pay his purchase price of $1,530.86 toward the reduction of notes of the company, amounting to $3,000, held by the Clinton National Bank, on which Stephens and Welsh were endorsers. The balance of the stock not taken by Hendershot and Stephens, inventoried at a few hundred dollars, and which neither party desired to take, was to be sold by either of them and applied to the debts of the company. The assets were finally divided and the business taken over about September 26th, 1903, Hendershot from that time carrying on the steam heating business and Stephens the other business of the company. Hendershot also undertook the completion of the company's outstanding contracts for putting in heaters, and has carried these out, paying the expenses and realizing a small profit, which has been used toward paying some of the company's debts. Hendershot also paid from his own money to the Pierce company $1,800 on account of their claim, leaving about $300 still due, for which claim has been presented to the receiver. Stephens, although he took possession of the stock assigned to him, did not pay anything therefor, either to the company, or by paying the price on the note held by the Clinton bank, or on any other claims. He died in November,

1903, and his estate is insolvent. Some of the goods not taken on the division were in the actual possession of Stephens at the time of his death, and his administrator has sold them, retaining the proceeds in a special account. The Clinton bank's claim is over $3,700, and other valid claims for over $500 have been presented to the receiver, who has realized from the assets (including the stock not divided between Hendershot and Stephens) less than $600. At the time the assets of the company were taken over by Hendershot and Stephens the company was clearly in an insolvent condition. Its assets were not sufficient to pay its debts, and the stockholders not being willing to make further advances, its credit was exhausted. The transfer to these two directors was made in contemplation of the company suspending its business by reason of this insolvent condition, and must, so far as the receiver representing creditors is concerned, be considered as having been made in contemplation of insolvency. The transfers were therefore void under the sixty-fourth section of the Corporation act, and the receiver is entitled to recover from each transferee the value of the property respectively assigned to him. The section saves only *bona fide* transfers, without notice and for present valuable consideration, and these transfers were in fact substantially arrangements between the stockholders by which they agreed with each other to prefer two of the creditors by paying to them the money which was due to the company for the equal payment of all its creditors. Had the transfers been made to the creditors direct, they would have been utterly void under the statute, and if arrangements of this kind for disposition of a company's assets, on the brink of insolvency, are to be sustained, the law has been circumvented. The fair value of the property taken is admitted to be the inventory value, and the receiver is entitled to a decree against Hendershot and the administrator of Stephens for the amounts respectively taken, with interest. Hendershot, however, having paid debts of the company in consideration of the assignment, is entitled to be subrogated to the extent of the debts paid and to have these debts included as part of the claims against the company. If the estate of Stephens by reason of insolvency does not satisfy the decree against him, then for the balance

both Welsh and Hendershot are in the second place equally liable, and Welsh is secondarily liable on the decree against Hendershot for the value of the stock taken by him. The reason is that all three were the only directors and officers of the company, and the division of the assets in contemplation of insolvency, in violation of the statute and of their duties as directors, was made and concurred in by all. Each of them, in his proper order, is liable for the diversion of the assets, so far as necessary to pay the debts, and the value of these assets is the primary source of payment of the debts of the company. But these values, together with the assets in the receiver's hands applicable to that purpose, are not sufficient to pay the debts (including in these the amount of the Pierce company claim, to which Hendershot is entitled to be subrogated if he satisfies the decree), and the next question is the right of the receiver to recover for that purpose sufficient of the dividends or salaries. This involves also the question of the order of liability as between the recipients of dividends and salaries. The facts relating to the receipts of dividends and salaries are that from March, 1895, the dividends were paid, not out of the profits, but from the capital of the company. At this time Hendershot and Stephens, on account of the condition of the business, agreed to reduce their combined salaries from $2,000 to $1,000, Hendershot receiving $600 and Stephens $400. The payments of dividends continued up to March, 1900, and the amounts received by the defendants respectively were: Stephens (on forty-five shares), $2,475; Hendershot (on twenty-five shares), $1,375; Welsh, $1,375, and Downs (on five shares), $275. Within the six years prior to the filing of the bill (August 25th, 1904) Stephens received $675, Hendershot, $375; Welsh, $375, and Downs $75. For salaries from and after March, 1895, Stephens received $800 (nothing later than April, 1896), and Hendershot received $7,100, of which all, except $2,400, was received prior to August, 1898. From 1895 to 1899 Hendershot received salary at the reduced rate of $600 yearly; in 1900 and 1901, after payment of dividends ceased, $800, and in 1902 and to October, 1903, at the rate of $1,000.

Stockholders are liable to the receiver for dividends paid out

of the capital, so far as necessary for the payment of debts—
*Williams* v. *Boice, 38 N. J. Eq. (11 Stew.) 364 (Chancellor
Runyon, 1884)*—and for the same purpose officers are liable to
refund excessive salaries, as being misappropriation of the assets.
*Hayes, Receiver,* v. *Pierson, 65 N. J. Eq. (20 Dick.) 353 (Vice-
Chancellor Stevens)* ; *affirmed on appeal, 45 Atl. Rep. 1091;
Davis* v. *Thomas & Davis Co., 63 N. J. Eq. (18 Dick.) 572
(Vice-Chancellor Reed, 1902)* ; *Lillard* v. *Oil, Paint and Drug
Co., ante p. 197 (Vice-Chancellor Emery, 1903)*. From April,
1896, Stephens stopped drawing salary or rendering service, and
Hendershot from that time seems to have managed the entire
business, charging for three years $600 a year, besides receiving
$250 a year as dividends. The proofs as to the work actually
performed by him would not justify the conclusion that $800
was an excessive salary. There was, however, no justification
or excuse for the increase of his salary from $800 to $1,000
while the company was becoming more deeply involved every
year, and his present explanation of it, that he drew the in-
creased amount because Welsh and Stephens insisted on carry-
ing on the business, and that he was entitled to $1,000 under
the agreement, is altogether unsatisfactory as a justification of
the increase. For the excess over $800 a year he must account
to the receiver. So far as the receiver alone is concerned, there
would be no liability (independent of the agreement between
the stockholders) for the repayment by Hendershot of any of
the salary beyond this excess, unless it be considered that the
mere continuance of the business, after the company's capital
became impaired, created such liability on his part. There is
no evidence to sustain a conclusion that the business was con-
tinued by the stockholders for the purpose of giving him the
salary, or in any bad faith on Hendershot's part, and, on the
contrary, his evidence shows that but for a division of opinion
between him and the other holders of the stock who controlled
the company, the business would probably have been closed up
several years earlier. Independent of the agreement, therefore,
the receiver, as representing creditors, has no right to recover
any further portion of the back salaries from either Hendershot
or the Stephens estate. Does this agreement give him, as receiver,

any right of recovery for that purpose? I think not. The agreement was made for the primary purpose of regulating, as between these individual stockholders themselves, and *inter sese* only, the disposition of the profits of the business while these stockholders continued to manage the business and draw salaries, and to define *inter sese* what should be profits. By force of this agreement, salaries, which are ordinarily expenses of the business, were not, as between the stockholders, entitled to dividends and to salaries also, to be considered as expenses. Reasonable salaries are in fact expenses to be deducted before any profits or dividends are payable, and the receiver, as representing creditors, is, in my judgment, not entitled to the benefit of this contract between these individual stockholders for the purpose of recovering back the salaries which have been paid to them. From April, 1900, no dividends were paid, and to the knowledge of both Stephens and Welsh, Hendershot took his salary without objection on their part. The contract might perhaps have been enforceable against either Hendershot or Stephens drawing salaries as managers, on the application of any of the other stockholders while the company was a going concern, and if the payment had been objected to; but the other stockholders having for over three years acquiesced in the payment of the salary before dividends, it is questionable whether they could require the return for their benefit as stockholders of a going company. The receiver, as representing creditors merely, occupies a less favorable position, and has no claim to recover the salaries, either directly or by way of adjusting any supposed equities between defendants. The decree to which he is entitled on his bill for the payment of debts must therefore be that he is entitled to recover—*first,* the value of the assets diverted in the manner above indicated by the defendants Hendershot and Stephens; *secondly,* the salary received by Hendershot, after 1901, in excess of $800 a year; and *thirdly,* the amounts of dividends. This includes all dividends paid within six years from the time of filing the bill, and the next question is whether the dividends paid prior to this date can be recovered, or whether the statute of limitations is applicable to the claim.

Against defendant Downs there can be no recovery for dividends received more than six years prior to the filing of the bill. He was not an officer of the company, and there is no proof that at the time of the receipt of the dividends before that time he had notice that the dividends were paid out of the capital of the company, instead of the profits. The dividends, when received, were received as his own money, and the receiver can be entitled to their return only on the equitable doctrine that being in fact paid from the capital, a fund held by the company in trust for the payment of debts, the money received for dividends, being in fact capital, was impressed with this trust. But·this trust so raised by the doctrines of the court of equity belongs to the class of implied or constructive trusts, and as-to such trusts the general rule is that in the absence of fraud, the statutes of limitation are applicable. In *McLane* v. *Shepherd, 21 N. J. Eq. (6 C. E. Gr.) 76, 79 (1870),* the rule was stated and the authorities cited by Chancellor Zabriskie. The case, however, was one where the remedies at law and equity for the alleged trust were concurrent, it being a case of agency, and in that class of cases the validity of the defence is settled. *Smith* v. *Wood, 42 N. J. Eq. (15 Stew.) 563, 569 (Vice-Chancellor Van Fleet, 1887)*; affirmed on appeal, *44 N. J. Eq. (17 Stew.) .603 (1888).* In *Hayden* v. *Thompson, 71 Fed. Rep. 60, 69 (Circuit Court of Appeals, 1895),* the leading federal authorities for the general rule that the statute is applicable to implied or constructive trusts are collected by Justice Sanborn, and a suit in equity by the receiver of an insolvent national bank against a stockholder for the recovery of dividends unlawfully paid out of the capital was held to be barred by the statute, the stockholder having innocently received the dividends in good faith, and without notice of any fact which would lead a reasonably prudent man to learn that the dividend was not earned. The opinion of Chancellor Runyon, in *Williams* v. *Boice, 38 N. J. Eq. (11 Stew.) 364 (1884),* is relied on as holding the statute not applicable. That was a bill by the receiver of an insolvent bank to recover dividends alleged to have been paid out of capital, and on general demurrer to the bill this question of the application of the statute, although not raised

either in the demurrer or at the argument, was considered by the chancellor and the statute declared inapplicable. As the bill was filed to recover all dividends paid after a certain date and included (as I read the case) dividends paid within six years, the decision of the question whether the statute applied, was not necessary or involved on a general demurrer. Under these circumstances, I think I am justified in considering the question as not conclusively disposed of by the opinion. On examining the ground upon which it was based, it appears that the decision of Justice Story, in *Wood* v. *Dummer, 3 Mason 308; 30 Fed. Cas. No. 17,944,* was mainly relied on. This case was one where the stockholders of a bank, for the purpose of liquidating its affairs, divided the capital without reserving sufficient to pay the debts, and the right of recovery was placed expressly on the ground that the capital stock, being a trust fund, might be followed by the creditors into the hands of any person having notice of the trust attached to it, and that as to the stockholders themselves there could be in the case no pretense to say that both in law and in fact they were not affected with the most ample notice. Justice Story held that under the charter of the company the capital stock was a trust fund for the creditors, and the stockholders, upon the division, took it subject to all equities attached to it, as impressed with the trust and *cum onere.* Such division of the capital among stockholders on liquidation is plainly a very different transaction from the receipt by the stockholder of dividends of a going company in the ordinary course of business, and legally declared, as he supposes, from the profits, and not from the capital. As to such innocent stockholder, who is liable only by reason of a constructive or implied trust, which arose by reason of his receipt of the dividends, and which arose also at the time of the receipt, I think the statute should be held applicable.

The other stockholders, however, Hendershot, Welsh and Stephens, who were also the sole directors and officers of the company, as early as March, 1895, knew that the dividends were not paid from the profits, but from the capital. Their receipts of the dividends were therefore in fraud of the company and of its creditors, and a court of equity will not, on their behalf,

interpose the bar of the statute. The circumstance that under the Corporation act (section 30) they are not liable as directors after six years does not affect their liability as stockholders for the amounts actually received in fraud of the company, for the liability of each of the directors under. this statute is for the return of the whole dividend paid to all of the stockholders during the administration of the directors, a liability different in its character from that arising from the actual receipt of funds. Hendershot, Welsh and Stephens are liable for the amounts received by them respectively as dividends since March, 1895, and Downs, since August, 1898, so far as necessary to pay the debts of the company, including the expenses of administration. As stockholders they are not liable beyond the amounts respectively received, but the liability is not merely for a proportionate share of the indebtedness, and therefore the solvent stockholders must make up, so far as they are chargeable with dividends, the deficiency of the insolvent estate of Stephens to pay its share of the debts. The bill is not framed to enforce any liability as directors, and no decree can be made on that basis.

The defendants Welsh and Stephens' administrator file separate cross-bills, based on the agreement of April 1st, 1892, relating to the payment of dividends before salaries. The cross-bill of Stephens' administrator is filed against Hendershot and that of Welsh against both Hendershot and Stephens' administrator. Neither the receiver nor the company is a party defendant to either cross-bill. Both bills make charges against Hendershot relating to the management of the business, but the whole relief claimed at the hearing rests on the enforcement of the agreement by declaring a primary.liability to the receiver on the part of Hendershot on account of his receipt of salaries under the agreement. Neither of the cross-complainants asks in this suit a decree against Hendershot for the payment to themselves of the amounts withdrawn by him, or claim that there were any profits applicable to either dividends or salaries under the agreement after 1895, or at least 1898. For the reasons above given, the receiver is not at all entitled to an account of the salaries under the agreement for the purpose of

paying debts, and there should be on his decree no provision for this indirect recovery of the salaries by establishing an order of liability between the defendants themselves based on an agreement which he cannot enforce. If the receiver was entitled, as he claimed in his bill, to a decree for the return of all salaries paid under the agreement, as well as all dividends, then a settlement of the order of liability, as between dividends and salaries, might be proper. The cross-bills must therefore, on the evidence, be disposed of as independent suits in equity against Hendershot and Stephens' estate for an accounting for the salaries. Considered on this basis, they must both be dismissed.

Stephens received no salary within six years from the time of filing the bill, and any claim of Welsh against him is outlawed. Hendershot's salary was received with the assent of both Welsh and Stephens, who knew the financial condition of the company, but desired the continuance of the business by Hendershot, the only manager of the business for six years before the bill was filed. Neither of them, therefore, is entitled to recover back from Hendershot the salary for conducting the business, which they together controlled, and which salary both understood he was receiving. These payments, made by consent and with full knowledge of the condition of the company, cannot be recovered or brought into account on the ground that the payment allowed by themselves was a breach of the contract with them.

Treating the payments of salaries as coming within the scope of the contract, the contract must, as to these payments, be considered as waived or abandoned. But I think that the sounder view is that these payments of salaries (at least those made after dividends ceased in 1900) were not considered as payments controlled by the dividend clause of the agreement, for by the agreement neither dividends nor salaries were to be paid except from profits, and from 1900 at least all parties knew that there were no profits to pay either dividends or salaries, and from this time at least the salary was by common consent treated as part of the expense of carrying on the business. If this view be correct it cannot now be recovered on the theory that it was intended by the parties as a payment out of profits under the

agreement relating to the division of profits. Both cross-bills must therefore be dismissed.

On behalf of Hendershot the claim is also made by answer, but not by cross-bill, for the enforcement of the contract alleged to have been made with him on the division of the assets that Stephens should pay $1,500 on the Clinton bank notes, and that Welsh and Stephens should take care of the balance due on these notes, if the assets were insufficient. This enforcement is also sought by the indirect method of directing a primary liability on their part to pay any decree to the receiver. The receiver does not seek the enforcement of this contract or any rights thereunder, for his decree is based on the repudiation of its validity. Any right, therefore, which Hendershot has against either Welsh or Stephens under such contract is a matter for enforcement by an independent suit, and not by a direction as to the order of liability for the receiver's decree. The contract, moreover, if considered to be proved by Hendershot, establishes a liability which is purely legal and not equitable, and both Welsh and Stephens' administrator are entitled to its establishment in a legal tribunal. In *Headley* v. *Leavitt, 68 N. J. Eq. 591 (Court of Errors and Appeals, March, 1905)*, a claim under a similar contract was sent to a court of law for settlement. It should be further stated that as against the administrator of Stephens there is no evidence of his intestate's contract to pay the balance due on the Clinton bank notes after paying thereon the value of the goods taken by Stephens, except that of Hendershot, as to transactions between the intestate and himself. The evidence was objected to at the hearing, and being inadmissible under the Evidence act (*P. L. 1900 p. 363 § 4*) cannot be considered. On the answer of Hendershot, therefore, there can be no direction in the decree in the receiver's bill that a primary liability, either for the Clinton bank notes or any other debt of the company, must be first satisfied by either Welsh or the Stephens estate, because of this alleged contract on the division of the assets. Decree will be advised in accordance with this opinion, and on the settlement of the decree I will hear parties as to a reference.