HINKLEY and another, Appellants, vs. SAGEMILLER, Respondent.

*October 14, 1926—January 11, 1927.*

*Corporations: Contracts with promoters on behalf of corporation: Acceptance by corporation when organized: How evidenced: Suspension or removal of officer: Officer not qualified to vote as a director on question: Unfaithful agents: Forfeiture of compensation: Costs: Of proposed findings: Witness fees: Of stockholder of corporation attending court.*

1. A finding of the trial court that, before the organization of a corporation, an agreement had been made by the incorporators respecting the salary of the corporate manager, is *held* not against the clear preponderance and great weight of the evidence. p. 516.

2. A corporation, as a general rule, having no being, franchises, or faculties until it is organized, promoters or incorporators attempting to act for it cannot stand in the relation of an agent to a principal. p. 517.

3. Contracts made by the promoters are in the nature of 'offers which may be accepted by the corporation when it comes into existence, and such acceptance may be by act of the corporation or implied from conduct and circumstances. p. 517.

4. If after its organization a corporation accepts the benefits of a contract made on its behalf by its promoters, it becomes bound by the contract and must accept its burdens. p. 517.

5. In this case the agreement of the promoters for an increase in the salary of the corporate manager as the sales increased is *held* not to have been adopted or to be binding on the corporation in the absence of an affirmance of the agreement or any payment of or claim for such compensation on the part of the officer before he was removed from his office. p. 518.

6. An officer and director of a corporation has no right to vote upon a resolution suspending him from office because of misappropriation of the company's funds, and such a resolution, concurred in by two of the four directors and opposed by the vote of the director affected and by one other, is in fact adopted. During the period of suspension the officer is not entitled to compensation although he continued to act as an officer in defiance of the resolution. pp. 519, 520.

7. An agent who has been guilty of misconduct and fraud in relation to the transaction of his principal's business is not entitled to compensation for his services. p. 519.

8. Plaintiffs, in proceedings for the removal of the corporate officer and for an accounting, at the request of the court prepared proposed findings, which were adopted in part. *Held,* that they were entitled under sub. (3), sec. 271.04, Stats., to tax the cost of preparing the proposed findings and copies thereof and the cost of preparing copies of the findings finally adopted. p. 520.

9. Where a stockholder and director of the corporation actually attended the proceedings for four days, though not in response to a subpoena, plaintiffs were entitled to tax his witness fees as costs. p. 521.

APPEAL from a judgment of the circuit court for Milwaukee county: OTTO H. BREIDENBACH, Circuit Judge. *Reversed, with directions.*

Removal of corporate officer and accounting between the corporation and the deposed officer. The plaintiff *George M. Hinkley,* George C. Hinkley and A. J. Rehberger, and the defendant *Henry B. Sagemiller,* some time prior to the 18th day of March, 1925, discussed the feasibility of organizing an oil company to carry on an oil business in West Allis, Wisconsin. It appears from the findings of fact that the corporation was organized on the 18th day of March, 1925, and the stock was equally divided among the four in-

dividuals named. *George M. Hinkley* was a director, stockholder, and president of the corporation. On March 23, 1925, the defendant was elected a director, secretary, and made general manager of the business of the corporation to serve until further notice. The defendant's employment dates from the 15th day of March, 1925. Due to misappropriation of its funds and other misconduct on the part of the defendant *Sagemiller,* President *Hinkley* attempted to remove *Sagemiller* from office on the 20th day of November, 1925, and on December 21, 1925, by order of the court duly served, the defendant *Sagemiller* was restrained from acting further as general manager. The amount of the funds misappropriated was $760.44. The court further found:

"That it was agreed between the plaintiff *West Allis Oil Company* and the defendant that the defendant should receive for his services as general manager of said company the sum of $200 per month until the gross sales of the company should equal or exceed $5,000 per month, whereupon defendant should receive as salary the sum of $250 per month until the gross sales of the company should equal or exceed $10,000 per month; whereupon the defendant should receive as salary the sum of $300 per month."

The court further found that the defendant was entitled to receive $300 per month for the months following June, 1925; that the whole amount of salary which the defendant *Sagemiller* was entitled to draw was $2,500, of which amount he had been paid the sum of $1,940, and that there remained due and owing to him the sum of $560. The court further found that by reason of the gross misconduct of the business and affairs of the plaintiff company the defendant *Sagemiller* was "an improper person to hold the offices of secretary, or general manager, or director of plaintiff corporation, or any other position of trust therein, or to have the management or control thereof." And as conclusions of law that the *West Allis Company* should recover from *Sagemiller* the sum of $700.44 plus $60 on account of two mer-

chandise coupon books, less the sum of $560 due the defendant *Sagemiller* as salary; that the plaintiff company have judgment against *Sagemiller* for $200.44; that judgment be entered ousting *Sagemiller* from the offices of secretary, general manager, and director of the plaintiff company. Judgment was entered accordingly, from which the plaintiffs appeal.

Upon taxation of costs the plaintiffs endeavored to tax $8.25 for original proposed findings of fact, $11.88 for copies, and $41.52 witness fees for George C. Hinkley, a stockholder and director of the plaintiff corporation. The clerk allowed such items, and on motion for retaxation the items were stricken out. From the order striking out such items the plaintiffs likewise appeal.

For the appellants there were briefs by *Edgar L. Wood,* and oral argument by *Richard H. Tyrrell,* both of Milwaukee.

For the respondent there was a brief by *Bendinger, Graebner, Hayes & Hofer* of Milwaukee, and oral argument by *H. J. Bendinger.*

The following opinion was filed November 9, 1926:

ROSENBERRY, J. The principal contention of the plaintiffs here is that the court erred in allowing the defendant *Sagemiller* more than $200 per month as salary for services rendered to the plaintiff corporation. The evidence in support of the finding as to the amount of salary which the defendant *Sagemiller* was to receive is to the effect that some time prior to the incorporation the four intending incorporators met and that at such meeting it was agreed that *Sagemiller* should receive a salary. The testimony of the witness Rehberger tends to support the finding, while that of *George M. Hinkley* and George C. Hinkley squarely contradicts it. It further appears without dispute that although the gross sales of the company for May and June were greater than $5,000 and less than $10,000 and in each of

the succeeding months in excess of $10,000, the defendant *Sagemiller* drew only $200 a month of salary, and, although a general manager and in charge of the business of the company, at no time instructed the bookkeeper to pay or credit him with any amount in excess of $200 per month. It also appears without dispute that no formal action was ever taken after the incorporation of the company. At a meeting of the stockholders for the purpose of organizing the corporation, it appears that there was some discussion as to the salary to be paid to the defendant *Sagemiller,* but neither the amount of the salary nor a sliding scale for the future was mentioned or agreed upon at that meeting. Such talk as there was related to the understanding previously had, and the nature of that understanding was neither discussed nor made a matter of record. The by-laws of the corporation provide:

"The compensation of all officers shall be fixed by the board of directors and of all employees not mentioned in these by-laws by the officer or officers so authorized by the board of directors."

While a finding to the effect that there was no sliding scale agreed upon at the meeting held a week or ten days prior to the incorporation of the company would be in accord with our view of the weight of the evidence, it cannot be said that the finding of the trial court is so clearly against the clear preponderance and great weight of the evidence that it should be set aside. Assuming, therefore, that a week or ten days before the incorporation the matter of salaries was discussed, that it was agreed the defendant *Sagemiller* should be paid $200 a month until the sales should equal or exceed $5,000 and $250 until the sales should equal or exceed $10,000, and thereafter $300 per month; that no action was ever taken by the board of directors in respect to the salary of the secretary and general manager; that he was paid down to and including November 21, 1925, at the rate of

$200 per month,—is the defendant *Sagemiller* entitled to compensation in excess of $200 per month? This involves the power of promoters and incorporators to bind the future corporation by a contract made by them for and on its behalf. If the defendant *Sagemiller* is to recover, he must do so upon express as opposed to implied contract. *Lowe v. Ring,* 123 Wis. 370, 101 N. W. 698.

The general rule is that a corporation until it is organized has no being, franchises, or faculties. Promoters or incorporators attempting to act for it cannot therefore stand in the relation of an agent to a principal. Contracts made by promoters for and on behalf of a future corporation are in the nature of offers which may be accepted by the corporation when it comes into existence. Such acceptance may be shown by act of the corporation or implied from conduct and circumstances, but in order to bind the corporation there must be some acceptance or adoption by the corporation under the rule laid down in this state. *Pratt v. Oshkosh Match Co.* 89 Wis. 406, 62 N. W. 84. See, also, *Samuel Meyers, Inc. v. Ogden Shoe Co.* 173 Wis. 317, 181 N. W. 306; *Ziemer v. C. G. Bretting Mfg. Co.* 147 Wis. 252, 133 N. W. 139; 1 Fletcher, Corp. § 150, p. 309.

If after its organization a corporation accepts the benefit of a contract made on its behalf by its promoters, it becomes bound by the contract by adoption and must accept the contract with its burdens as well as its benefits. *Morgan v. Bon Bon Co.* 222 N. Y. 22, 118 N. E. 205. The case cited is one where a third person agreed with the promoters to do certain work for the corporation after it was organized and thereafter performed services in accordance with the agreement. This was held to be an adoption by implication. Where the acts which it is claimed amount to an implied adoption are performed by an officer who is a party to the contract and at the same time has charge of the corporate affairs, the situation is materially different, particularly so

under the rule in *Lowe v. Ring, supra.* So far as there is any evidence of adoption or affirmance by any one other than the defendant *Sagemiller* after the corporation was organized, it tends to sustain the contention of the plaintiffs rather than that of the defendant *Sagemiller.* In the month of October the stockholders met for the purpose of ascertaining the cost of handling their product. At that time *Sagemiller* was asked to state the amount of his salary, which he stated to be $200, and the costs were figured on that basis. There is no other testimony except a conversation had between the incorporators as they were leaving the office of the attorney where the incorporation papers were executed, to the effect that the defendant *Sagemiller's* compensation had been agreed upon, two of the directors claiming that it was fixed at $200, and two, including *Sagemiller,* claiming that it was $200 a month and to be increased in accordance with the sliding scale heretofore set out. If *Sagemiller* had drawn his compensation in accordance with the contract as claimed by him, or it had been credited upon the books of the company to the knowledge of the other stockholders, a different situation would be presented. It is considered, therefore, that even if, as the court found, there was an agreement prior to incorporation, there is not such affirmance or adoption of it subsequent to the incorporation of the company as to bind the corporation under the circumstances. *Mills v. Hendershot,* 70 N. J. Eq. 258, 62 Atl. 542. The defendant *Sagemiller* was therefore not entitled to compensation at a greater rate than $200 per month.

The second contention of the plaintiffs is that the defendant *Sagemiller* was not entitled to compensation after he was suspended on November 21st for the period ending December 21st, when he was finally suspended by order of the court.

At a meeting of the board of directors a resolution was introduced deposing *Sagemiller* as secretary and general

manager of the corporation. Upon that question directors George C. Hinkley and *George M. Hinkley* voted for the resolution, and directors A. J. Rehberger and *Henry B. Sagemiller,* the defendant, voted against the resolution. Thereafter the president, so far as it was possible for him to do, suspended the defendant. The resolution was in fact adopted because *Sagemiller* had no right to vote upon the resolution deposing him from office. It is an elementary principle in every system of jurisprudence that a man may not sit as judge in his own case. See 3 Cook, Corp. (8th ed.) § 649; 3 Fletcher, Corp. § 1889; also 4 Fletcher, Corp. § 2352.

That good cause existed for the removal of *Sagemiller* there can be no doubt. The findings of the court in that regard are well supported by the evidence. It is not clear whether the defendant *Sagemiller* continued to manage and operate the business of the company, but apparently he did so in defiance of a majority of the members of the board of directors qualified to act.

The court found that the defendant *Sagemiller* had misappropriated $700.44 of the company's funds. Many of these items were misappropriated by the defendant *Sagemiller* for his personal use and benefit. We do not understand upon what theory an officer of a corporation who has been guilty of such gross misconduct as to warrant his removal from office can be held to be entitled to compensation for services during the period of his suspension. It is one of the fundamental principles of agency that an agent guilty of misconduct and fraud in relation to the transaction of his principal's business is not entitled to compensation for his services. *Rogers v. Priest,* 74 Wis. 538, 43 N. W. 510; *Arthur Koenig Co. v. Graham Glass Co.* 170 Wis. 472, 175 N. W. 814. Certainly the secretary and general manager of a corporation owes to the corporation the utmost fidelity and is required in his dealings with the corporation to ex-

ercise the highest good faith. No court holds corporate officers to a stricter obligation with respect to dealings between themselves and the corporation which they serve than does this court. It cannot be. said, therefore, that a corporate officer who has so far disregarded his duties as to have misappropriated its funds and been guilty of misconduct is entitled to compensation. See 4 Fletcher, Corp. § 2766, and cases cited; also 14 A Corp. Jur. 139.

The plaintiffs next contend that they were entitled to tax costs for proposed findings of fact and copies thereof. This claim is based upon the provisions of sub. (3), sec. 271.04, Stats., which provides:

"When allowed costs shall be as follows: . . .

"(3) Drawing all process and returns, admission of guardians, recognizances of bail in suits against the bail only, pleadings, adjournments, suggestions, entries, special verdicts, and bills of exceptions which shall be necessary, and all other necessary entries, pleadings and proceedings in an action according to the practice of the court, and for which no special provision is herein made."

The proposed findings contained seventy-nine folios, and the plaintiffs sought to tax $19.75 for the original and $28.44 for three copies. The plaintiffs also taxed and the court allowed drawing findings thirty-three folios, $8.25, and for copies ninety-nine folios, $11.88. The court disallowed the amount taxed for proposed findings and copies. It is alleged and not disputed that by the practice of the court and by request in this instance, the plaintiffs, in whose favor the judgment went, were requested to prepare proposed findings. It appears from the opinion of the trial court that several findings proposed by the plaintiffs were not made, not being in accordance with the facts as found by the court. The proposed findings do not appear in the file. We are therefore unable to ascertain in what respect the findings as signed differ from the proposed findings. If an attorney on the request of the court, or in accordance with the prac-

tice of the court, proposes findings covering the evidence which are an aid to the court in its consideration of the case, we see no reason why such an item should not be taxed. While the statute requires the trial court to prepare the findings of fact and conclusions of law, it is the general practice for attorneys to assist the court in that respect by offering proposed or requested findings. It appears, however, that the proposed findings were in part adopted by the court. The plaintiffs would therefore not be entitled to tax for the second draft, but should be allowed for the copies. The court should therefore have allowed $19.75 for the original proposed findings, $28.44 for copies, and $11.88 for copies of the findings.

George C. Hinkley was not a party to the action, although he was a stockholder and director of the company. He did not attend in response to a subpœna, but was actually in attendance for four days. The court erred in denying plaintiffs' right to tax therefor.

*By the Court.*—Judgment is reversed, and cause remanded with directions to enter judgment for the plaintiffs as indicated in this opinion.

A motion for a rehearing was denied, with $25 costs, on January 11, 1927.