MEYERS, Executrix, Respondent, vs. WELLS, Defendant:
DIAMOND COAL & DOCK COMPANY, Appellant.

*February 19—March 29, 1948.*

354

For the appellant there was a brief by *E. B. Martineau* of Marinette, and *M. P. Sawyer* of Menominee, Michigan, and oral argument by *Mr. Martineau.*

*Emmet McCarthy* of Marinette, for the respondent.

BARLOW, J. The first question is whether appellant adopted the contract entered into between Wells and Meyers.

It must be conceded that Wells entered into this contract in order to obtain Meyers' services to manage the coal company, wherein he was to be the majority stockholder of a family corporation, where Meyers was the only outside stockholder, all stockholders being officers of the corporation. Appellant relies on the fact that the board of directors of the corporation, never took any action adopting the Wells-Meyers contract and never agreed upon the compensation which Meyers was to receive. It is argued that the Wells contract in no way bound the corporation.

The corporation was not in existence at the time the contract was entered into but it was a contract made by one of the promoters in the interest of the future corporation and constituted an offer which could be accepted by the corporation when it came into existence. The failure to formally accept or adopt the contract by formal action of the board of directors does not mean its adoption cannot be implied from conduct and circumstances following its incorporation. If the corporation accepts the benefits of a contract made on its behalf by its promoters this amounts to an adoption and it must accept the contract and its burdens as well as its benefits. *Hinkley v. Sagemiller* (1927), 191 Wis. 512, 210 N. W. 839; *Pratt v. Oshkosh Match Co.* (1895) 89 Wis. 406, 62 N. W. 84; *Buffington v. Bardon* (1891), 80 Wis. 635, 50 N. W. 776; *Samuel Meyers, Inc., v. Ogden Shoe Co.* (1921) 173 Wis. 317, 181 N. W. 306. Meyers at no time rendered any services for Wells personally. During the first two weeks of his employment he was engaged in the details of organization of the corporation and getting the property ready for operation, and from that time on he was the duly elected manager of the corporation and acted as such. He was paid by the corporation for the services rendered during the two weeks prior to the time it was organized, and at all times thereafter for a period of more than five years. The acts of the officers clearly establish its adoption as found by the trial court.

On the question of whether this contract was within the statute of frauds, appellant relies on the case of *Brown v. Oneida Knitting Mills* (1938), 226 Wis. 662, 277 N. W. 653. In that case there was no written contract between any of the parties, and the court held that where the period of employment under an oral contract extended over a period of more than one year the contract was void because it was not in writing. Here we have a written contract, and its adoption by the defendant corporation binds the corporation in accordance with the terms of the written contract. No new written contract is necessary to be entered into between the party adopting the contract and the other party bound by it in order to take it out of the statute of frauds.

Appellant contends the contract was modified on the 27th day of April, 1939, by the corporation and Meyers, whereby Meyers agreed to reduce his salary from $5,000 per year to $4,000 per year. If there was in fact a modification of this written contract it would have to be mutual. *Thomsen v. Olson* (1935), 219 Wis. 145, 262 N. W. 601. To sustain its position appellant argues that Meyers approved the pay roll semimonthly after April 27, 1939, whereby he was paid at the rate of $4,000 per year, and supervised the preparation of annual statements which were furnished to stockholders of the company, setting forth the assets and liabilities, at no time reflecting the unpaid balance for services which Meyers now claims. It is undisputed there was a conversation between Wells as president of the corporation and Meyers as its manager, and the only evidence of the agreement that was entered into is the testimony of Meyers that Wells said to him: "In view of the fact that we will probably not be getting any coal for several months, that everything was going out and nothing was coming in, . . . Nick, do you mind if you draw, for the time being, less than the contract rate, after which the difference will be made up?" Wells was available to be called as a witness and the court gave appellant every opportunity to call

him but he was not produced. The court had a right to believe this testimony, especially in view of the fact that appellant by its original answer admitted the execution of the contract for services to be rendered for appellant and made no claim it was modified.

On the question of whether the terms of the contract extended beyond the three-year term, it is undisputed that no new written contract was entered into at the expiration of the original contract although Meyers several times requested that one be entered into. He continued to work. It is a general rule of law that if an employee continues working after his term expires and no new contract is made it will be presumed the parties intended he should be paid the same wages he received under the original contract. *Kellogg v. Citizens Ins. Co. of Pittsburgh* (1896), 94 Wis. 554, 69 N. W. 362; *Dickinson v. Norwegian Plow Co.* (1898) 101 Wis. 157, 76 N. W. 1108; *Appleton Waterworks Co. v. Appleton* (1907), 132 Wis. 563, 113 N. W. 44; *Brown v. Oneida Knitting Mills, supra;* 39 C. J., Master and Servant, p. 186, sec. 257. Meyers continued to render services as manager of appellant corporation after the original contract expired. The salary he was entitled to while the contract was in effect continued after the expiration of the contract where no new agreement was entered into. This affirms the decision of the trial court.

*By the Court.*—Judgment affirmed.