CONWAY, Respondent, vs. MARACHOWSKY and others, Appellants.

*November 5—December 2, 1952.*

For the appellants there was a brief by *O'Keefe & Miller* of Portage, and oral argument by *Arno J. Miller*.

For the respondent there was a brief by *Brazeau & Brazeau* of Wisconsin Rapids, and oral argument by *Theo. W. Brazeau.*

FRITZ, C. J.   As stated by the learned circuit judge:

"The complaint herein does not ask for specific performance of the contract to issue fifty per cent of the stock, but rather states that pursuant to an agreement with the persons who now are the sole stockholders of the corporation and brings this action for damages based upon these services. That these services were valuable to the corporation and that they retained the benefits from them is apparent.  If the corporation accepts the benefits of a contract it must bear its burdens.

"The rule is stated in *Meyers v. Wells,* 252 Wis. 352, 355:

" 'The corporation was not in existence at the time the contract was entered into, but it was a contract made by one of the promoters in the interest of the future corporation and constituted an offer which could be accepted by the corporation when it came into existence.  The failure to formally accept or adopt the contract by formal action of the board of directors does not mean its adoption cannot be implied from conduct and circumstances following its incorporation. If the corporation accepts the benefits of a contract made on its behalf by its promoters this amounts to an adoption and it must accept the contract and its burdens as well as its benefits. *Hinkley v. Sagemiller* (1927), 191 Wis. 512, 210 N. W. 839; *Pratt v. Oshkosh Match Co.* (1895), 89 Wis. 406, 62 N. W. 84; *Buffington v. Bardon* (1891), 80 Wis. 635, 50 N. W. 776; *Samuel Meyers, Inc., v. Ogden Shoe Co.* (1921), 173 Wis. 317, 181 N. W. 306.' . . .

"The fruits of the entire enterprise, to which plaintiff's services contributed, may be securely retained indefinitely within the corporate entity to the exclusion of the plaintiff if he is not permitted to bring this action against it. While it may well be that he could obtain judgment against

the individual defendants and eventually reach the profits of the corporation by supplemental remedy after judgment, it is to be remembered that his original contract was with all of the stockholders. These stockholders are related by blood or marriage and the corporation is 'wholly dominated' by Julius Marachowsky. This is not a situation where there are other noncontracting stockholders or creditors whose rights might be a matter of concern. It is the opinion of the court that under these alleged circumstances the plaintiff should be able to go behind the 'corporate veil.' . . .

"The contention that the contract is void because it was not in writing as required by the statute of frauds has no application for the reason that the complaint does not ask for specific performance but rather demands damages for services rendered, and the damages may well be determined upon a *quantum meruit* basis rather than upon the specific contract.

"Likewise the argument made by the corporation that the agreement was void under sec. 241.02 (1), Stats., because it could not be performed does not apply. The stock could have been delivered within the year (*Foley v. Marsch*, 102 Wis. 25), and further the action is for damages for services rendered.

"The same reasoning applies to the last argument of the defendant corporation. Sec. 182.06, Stats., does not prevent the issuance of stock for services rendered. The value of the services is to be determined in an action for damage."

Plaintiff contends that after he, pursuant to said agreement with the defendants, had performed valuable services in the organization of the Portage Warehouse Company, and the securing of leases and other services for which defendants had agreed plaintiff should have fifty per cent of the shares of the corporation's stock, he demanded his shares of stock, but the individual defendants refused to recognize any right of the plaintiff therein, and refused to issue or transfer to him any stock of the corporation.

In *Pratt v. Oshkosh Match Co.* 89 Wis. 406, 409, 62 N. W. 84, the court stated:

"It is true a corporation is not responsible for acts performed or contracts entered into, before it came into existence, by promoters or other persons assuming to bind the company in advance. 1 Morawetz, Priv. Corp. sec. 547; Mechem, Agency, sec. 75. 'A corporation may, however, make itself responsible for such acts and contracts by subsequently adopting them. The liability of the corporation, under these circumstances, does not rest upon a supposed agency of the promoters and a ratification of their acts, but upon the immediate and voluntary act of the company.' 1 Morawetz, Priv. Corp. sec. 548. Such an agreement with the promoters usually constitutes an open offer, which may be accepted by the corporation after it is formed. Ibid. If the contract is within the corporate powers of the corporation, the corporation may, when organized, expressly or impliedly assume the responsibility of the same, and thus make it a valid obligation of the corporation. Mechem, Agency, sec. 75. 'The right of the agents of a corporation to adopt an agreement originally made by its promoters depends upon the purposes of the company and the nature of the agreement. If the agreement appears to be a reasonable means of carrying out any of the company's authorized purposes, the usual agents of the company have implied authority to adopt it; but they have no authority to adopt it under any other circumstances.' 1 Morawetz, Priv. Corp. sec. 549."

Likewise as stated in *Hinkley v. Sagemiller,* 191 Wis. 512, 517, 210 N. W. 839:

"The general rule is that a corporation until it is organized has no being, franchises, or faculties. Promoters or incorporators attempting to act for it cannot therefore stand in the relation of an agent to a principal. Contracts made by promoters for and on behalf of a future corporation are in the nature of offers which may be accepted by the corporation when it comes into existence. Such acceptance may be shown by act of the corporation or implied from conduct and circumstances, but in order to bind the corporation there must be some acceptance or adoption by the corporation under the rule laid down in this state. . . .

"If after its organization a corporation accepts the benefit of a contract made on its behalf by its promoters, it becomes

bound by the contract by adoption and must accept the contract with its burdens as well as its benefits. *Morgan v. Bon Bon Co.* 222 N. Y. 22, 118 N. E. 205. The case cited is one where a third person agreed with the promoters to do certain work for the corporation after it was organized and thereafter performed services in accordance with the agreement. This was held to be an adoption by implication."

And as stated in *Samuel Meyers, Inc., v. Ogden Shoe Co.* 173 Wis. 317, 320, 181 N. W. 306:

"Nor does it necessarily follow that the plaintiff could not recover because a contract was made with the promoters only and that it was not assigned. If a valid agreement is made with the promoters for the benefit of a corporation to be organized, by the weight of authority the corporation may adopt the contract if within its corporate powers and may enjoy the benefits and be subject to the liabilities thereof."

Another point raised by the appellant is that the contract alleged in the complaint is one for the sale of personal property, to wit, corporate stock, and not being in writing is void under the statute of frauds (sec. 121.04, Stats.), which provides in part:

"A contract to sell or a sale of any goods or choses in action of the value of fifty dollars or upwards shall not be enforceable by action unless the buyer shall accept part of the goods or choses in action so contracted to be sold or sold, and actually receive the same, *or give something in earnest to bind the contract, or in part payment,* or unless some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in that behalf." (Emphasis supplied.)

The complaint alleges that plaintiff performed the personal services required by him under the agreement alleged in the complaint, and we consider such performance of services by the plaintiff constitutes a "payment" within the meaning of the italicized portion of the statute quoted above.

Sec. 97, 1 Williston, Sales (rev. ed.), p. 239, states that the words of the statute "give something in earnest to bind the contract" unlike "part payment" requires that earnest to bind the contract "must be given at the moment at which the contract is concluded," thus acknowledging that part payment may occur after the making of the agreement. Sec. 98, 1 Williston, Sales (rev. ed.), p. 240, states that "part payment" may be in the form of services. 49 Am. Jur., Statute of Frauds, p. 584, sec. 267, states:

"The payment or part payment required to be given in order to take an oral contract of sale of personalty out of the statute of frauds may be in money, but payment in money is not necessary; the requisite payment or part payment may be made in anything of value which by mutual agreement is given by the buyer and accepted by the seller on account or in part satisfaction of the purchase price."

In *Driggs v. Bush,* 152 Mich. 53, 115 N. W. 985, 15 L. R. A. (N. S.) 654, 125 Am. St. Rep. 389, the defendants agreed to sell and the plaintiff to buy certain hay at $10 per ton. The hay was to be baled by the plaintiff and then transported by the defendants to the adjoining town. The plaintiff sent men to defendants' premises who, with the latters' assent, baled the hay and the plaintiff paid them for the work. The defendants afterwards refused to carry out the contract, and relied upon the Michigan statute of frauds, reading the same as the Wisconsin's sec. 121.04, Stats. The Michigan court in deciding for plaintiff, stated (p. 55):

"But there can be no doubt in this case that the service of baling this hay was received and accepted by these defendants, and if this was done at a time while the hay remained their property, and such service was received in pursuance of the contract made between the parties, we can conceive of no valid objection to treating this as a part payment of the consideration which was to pass from the plaintiff to the defendants at a time prior to the passing of the title of the hay to plaintiff. This being so, there has been a pay-

ment by the plaintiff and a receipt by the defendants of a part of the consideration."

Another objection raised by the defendants to the complaint is based upon the provision in sec. 182.06, Stats. 1949, which provides that:

"No corporation shall issue any stock other than dividend stock, except in consideration of money or of labor or property estimated at its true money value, actually received by it, equal to the par value thereof. . . ."

Defendants contend that the complaint does not allege that the true money value of the services performed by plaintiff equaled the par value of the stock he was to receive therefor. However, the complaint does not allege that such services were not worth the par value of the stock plaintiff was to receive and, if as defendants contend, sec. 182.06, Stats. 1949, was violated by the agreement, that is a matter of affirmative defense to be pleaded by answer, and is not to be raised by demurrer.

*By the Court.*—Order affirmed.