Blum, Respondent, vs. Palace Garage Company, Appellant.

*December 4, 1933—March 6, 1934.*

322

For the appellant there was a brief by *Goggins, Brazeau & Graves* of Wisconsin Rapids, and oral argument by *Theo. W. Brazeau.*

*R. R. Williams* of Marshfield, for the respondent.

The following opinion was filed January 9, 1934:

ROSENBERRY, C. J. The defendant contends here very vigorously that the misconduct of the plaintiff during the year 1927 was of such a character as to require a court to deny him any recovery for any part of the profits of the business derived from the operation of the corporation. The law respecting the right of an agent or servant to compensation where the agent or servant has been guilty of disloyalty or insubordination is stated in 2 Restatement of the Law of Agency, p. 1102, sec. 469, as follows:

"An agent is entitled to no compensation for conduct which is disobedient or is a breach of his duty of loyalty; such conduct, if constituting a wilful and deliberate breach of his contract of service, disentitles him to compensation for even properly performed services for which no compensation is apportioned."

The referee found, and the finding is not against the great weight and clear preponderance of the evidence, that the misconduct of the plaintiff was confined to the year 1927 and disallowed plaintiff's claim for compensation for any services rendered during that year; that the defendant recover the amount of the defalcations. While there was evidence with respect to one or two other transactions prior to January 1, 1927, which showed misconduct on the part of the plaintiff, it was not of that wilful and deliberate nature as found by the referee which would be a basis for denying compensation. Inasmuch as the services rendered prior to. January 1, 1927, were clearly apportionable, it is considered that the referee applied the correct rule of law and held that the plaintiff's right to recover on account of services rendered prior to January 1, 1927, was not barred by his misconduct during the year 1927.

On behalf of the defendant it is further contended that the finding of the referee with respect to the terms of the contract made between plaintiff and John A. Blum and Paul L. Blum for the defendant is against the great weight and clear preponderance of the evidence. All parties agreed that the plaintiff was to have one-third of something. The disagreement arises as to the basis upon which the one-third was to be computed. The referee found that it was to be one-third of the net profits to be figured and divided yearly. The allegation in the complaint is that the defendant was to pay a sum equal to an undivided one-third of the yearly profits. The allegation in the answer is that the plaintiff was to have one-third of the net operating profits which would be available out of dividends. When the plaintiff was called as a witness he testified:

"The conversation and agreement was that they were going to incorporate and employ me as manager and secretary and pay me $25 per week and one-third of the profits. There was not a word said as to what the profits would con-

sist of at that time. Nothing was said about dividends. It was said that the profits were to be net profits. . . . I never had any conversation with John Blum after the original conversation in which I referred to the one-third allowance I was to receive until shortly before we closed the business September 25, 1927."

Upon the trial Paul Blum testified:

"In addition to the $25 we agreed to pay him we would take six per cent interest on our investment and the balance of the operating earnings or dividends we would divide equally, one-third each. During the years that followed we did not compute each year the amount of money we had in the business and take six per cent. interest."

John Blum testified that he was not present at the time the arrangement was made in regard to one-third of the profits. Near the close of the trial the plaintiff was recalled and testified:

"When I made the agreement with Paul and John Blum, whereby they were to pay me one-third of the profits, it was the understanding or agreement that the division was to be yearly. The agreement was that they were to compute the earnings each year and pay me my share out of that. I asked them for an adjustment on that basis several times."

This is the only testimony which we are able to find in the record which sustains the finding of the referee to the effect that profits were to be computed yearly. The finding that the profits were to be computed on a yearly basis is so opposed to the plaintiff's testimony given upon his direct examination and to all the circumstances and inferences to be drawn from the conduct of the parties that it is considered to be against the great weight and clear preponderance of the evidence. While plaintiff testified that he had asked for an adjustment on that basis several times, it appears from his other testimony that he had not asked for an accounting prior to January 1, 1927. At or about that time he had asked for his one-third of the stock, which clearly

indicates that his idea then was that he was to have one-third of something that was derived from a stock interest in the company which would be entirely opposed to a yearly compensation to be determined by the amount of the net earnings for the year. It appears without dispute that between September 1, 1921, and January 1, 1922, the company sustained a severe loss. By taking over the business which had theretofore been conducted by the plaintiff and his brother Jacob, the defendant corporation assumed all the liabilities of the partnership. This loss resulted in part from liabilities which were not disclosed at the time of the organization of the corporation and in part from depreciation of the inventory of the property taken over from the partnership. The loss amounted to $17,508.30. In brief outline the situation at the time the arrangement was entered into was as follows: The plaintiff and his brother Jacob had operated an automobile sales and garage business for some years and were heavily in debt. John and Paul Blum had advanced considerable sums and were indorsers upon notes given by the partnership for additional sums. The business was in a failing condition. The proposal to organize the corporation was for the purpose of operating the business so as to pay off the liabilities of the partnership and so relieve the partners from their liability and relieve Paul and John Blum from liability as indorsers and to repay to them the sums which they had advanced to the partnership. The corporation took over all of the assets of the partnership and assumed all of its liabilities. John and Paul Blum advanced $26,000, which was represented by the capital stock of the corporation. It seems highly improbable that under such circumstances they would have entered into a contract on behalf of the corporation to pay Peter in addition to his salary one-third of the net profits yearly, having no regard whatever to the liabilities which they and the com-

pany had assumed on account of Peter and Jacob. The claim of the defendant seems much the more reasonable and is supported by all of the circumstances and inferences to be drawn from the facts in the case, which is that plaintiff was to have one-third of any profit made after the partnership liabilities in excess of the partnership assets had been paid and discharged. When that point was reached funds would be available for dividends. Under the arrangement the obligations of Jacob and Peter Blum as partners were not discharged until they were in fact paid by the corporation. How the corporation could make anything but a paper profit until those liabilities were disposed of, we are unable to see. If there appeared to be any doubt with respect to the accounting, we should feel obliged to reverse the judgment and remand the case for further proceedings. As we view the evidence, putting that construction upon it which is most favorable to the plaintiff, there was on December 31, 1926, no sum available as net profits if consideration be given to the loss incurred between September 21, 1921, and January 1, 1922. When the inventory shrank and the liabilities increased, there was just that much more for the corporation to pay before it could make a profit on the whole transaction and have funds available for a dividend. While the operation of the defendant company in the years in question was highly profitable, the plaintiff has no reason to complain because he was relieved of liabilities as partner which in the aggregate amounted to something over $41,000.

*By the Court.*—The judgment is reversed, with directions to dismiss plaintiff's complaint and enter judgment in favor of the defendant upon its counterclaim for $1,033.20 with interest and costs.

A motion for a rehearing was denied, with $25 costs, on March 6, 1934.