HARTFORD ELEVATOR, INC., Plaintiff-Respondent, v. LAUER, and wife, Defendants-Appellants.†

Supreme Court

*No. 77–340. Submitted on briefs February 7, 1980.—Decided March 4, 1980.*
(Also reported in 289 N.W.2d 280.)

† Motion for reconsideration denied, with costs, on April 15, 1980.

For the respondent the cause was submitted on the brief of *Charles O'Meara* and *O'Meara, O'Meara & Eckert* of West Bend.

SHIRLEY S. ABRAHAMSON, J. The question on appeal is whether an employer can recover from an employee, in addition to damages for misappropriation, all compensation paid to the employee during that period of employment in which the employee misappropriated funds belonging to the employer. The trial court awarded the employer $45,252.34, which was the entire salary and bonuses paid to the employee during the period in question. We reverse the judgment and remand the case.

## I.

The employer, the plaintiff, initiated the suit against the employee, the defendant, filing a complaint stating three causes of action. The first and third causes of action[1] were dismissed pursuant to a stipulation that provided that the employee pay the employer $50,000 and that the second cause of action continue as a separate cause of action unaffected by the stipulation.

This second cause of action of the complaint alleged that the employee breached his contract of employment by misappropriating funds belonging to the employer and that the employer elected to rescind the contract of

[1] The first cause of action alleged the facts of the misappropriation by the employee and his wife. The third cause of action alleged that the employee's wife, who was also an employee of the plaintiff, misappropriated funds, that the employer elected to rescind the contract of employment effective as of the time the first misappropriation occurred and sought restitution of compensation paid the wife.

The stipulation provided that the first and third causes of action be dismissed upon their merits and that the employee's wife be dismissed as a party defendant.

employment effective as of the time the first misappropriation occurred. The remedy sought was restitution of all compensation paid to the employee during the period the employee was misappropriating funds.

The parties submitted this second cause of action to the trial court upon a stipulation of facts. The stipulation states: The Hartford Elevator, Inc. (employer-plaintiff) hired LaVern Lauer (employee-defendant) on or about March 1, 1971, to serve as manager of the mill owned by the employer. The duties of mill manager included keeping accurate records of receipts and disbursements, making out invoices, receiving monies, preparing receipts for deposit in the company's bank account, and delivering checks to the corporate agent and cash receipts to the corporate president or secretary. The employee's salary was $1,000 per month, and he was paid bonuses in 1972, 1973 and 1974 totaling $6,477.53. The employment arrangement was terminated on April 7, 1975, because the employee was suspected of misappropriating funds.

The stipulation allows the trial court to take judicial notice of the criminal proceedings for information as to the method used to misappropriate funds. It appears that during the months January 1972 to March 1975 (except for April 1973), the employee apparently issued to customers invoices that were not posted in the corporation's books of account and he personally received cash for the amounts shown on the invoices and did not deliver the cash to the corporate officers. Duplicate copies of these invoices were obtained from various customers and are listed in an exhibit. These duplicate invoices totaled $35,533.10, but the trial court found that this amount was not necessarily the total amount misappropriated by the employee.

A criminal complaint was issued April 17, 1975, alleging a violation of sec. 943.20(1)(b) and (3)(c), Stats.,[2] during the years 1972 through 1975. The employee pleaded nolo contendere to the criminal charge, which plea was accepted. On April 5, 1976, the judgment of conviction was entered with the prison sentence stayed, and the employee was placed on probation, with the requirements that he make restitution in accordance with the stipulation in this civil action and that he pay a fine of $500.00 plus costs.

The trial court in the case at bar found that the employee had embezzled money from the employer from January 1972 through March 1975.

---

[2] Sec. 943.20(1)(b) and (3)(c), Stats. 1975:

"MISAPPROPRIATION

"943.20 **Theft.** (1) ACTS. Whoever does any of the following may be penalized as provided in sub. (3):

". . .

"(b) By virtue of his office, business or employment, or as trustee or bailee, having possession or custody of money or of a negotiable security, instrument, paper or other negotiable writing of another, intentionally uses, transfers, conceals, or retains possession of such money, security, instrument, paper or writing without the owner's consent, contrary to his authority, and with intent to convert to his own use or to the use of any other person except the owner. A refusal to deliver any money or a negotiable security, instrument, paper or other negotiable writing, which is in his possession or custody by virtue of his office, business or employment, or as trustee or bailee, upon demand of the person entitled to receive it, or as required by law, is prima facie evidence of an intent to convert to his own use within the meaning of this paragraph.

". . .

"(3) PENALTIES. Penalties for violation of this section shall be as follows:

". . .

"(c) If the value of the property exceeds $2,500, a fine of not more than $10,000 or imprisonment for not more than 15 years or both."

## II.

The trial court in the instant case concluded that the contract of employment imposed a duty of loyalty on the employee with respect to the employer's affairs and that the employee continuously and substantially breached his duty of loyalty by embezzling funds. The employee does not dispute these conclusions on appeal. The employee maintains that the trial court erred in concluding that the employer is entitled to recover from the employee all salary and bonuses paid to the employee after January 1, 1972, the first month during which the breach of duty was proven.

We initially observe that the original complaint demanded judgment in the amount of $110,000 actual damages and $200,000 punitive damages, in addition to the return of all compensation paid to the employee after the misappropriation began. The question of compensatory or punitive damages is not before this court. The parties and trial court viewed the compensatory and punitive damages demanded as satisfied upon payment of the $50,000 and dismissal of the first and third causes of action pursuant to the stipulation. The second cause of action was for restitution of compensation paid as shown by the final paragraph of the second cause of action:

"19. That the defendant LaVern A. Lauer, under his contract of employment with the plaintiff, received from the plaintiff compensation in the form of money paid for his services. For the full amount of such compensation paid to LaVern A. Lauer after the time that the first of said misappropriations occurred, the plaintiff has a cause of action for restitution."

The only question before us on appeal is whether the trial court erred in concluding as a matter of law that an employee who breaches his duty of loyalty must re-

turn to the employer compensation he received for services rendered during the period of the breach.

## III.

The trial court rested its decision on language in three Wisconsin cases[3] that an agent who breaches the duty of loyalty or who wilfully breaches the contract of employment forfeits his compensation. Although there is such language in our opinions this court did not require the employee in any of these cases to forfeit or return any compensation received in excess of the amount misappropriated.

One of the cases upon which the trial court relied was *Arthur Koenig Co. v. Graham Glass Co.*, 170 Wis. 472, 473–474, 175 N.W. 814 (1920). In this action by an agent against his principal to recover the reasonable value of the agent's services, this court stated the applicable rule of law as follows:

"An agent who is guilty of fraud upon his principal or who betrays his trust by acting adversely to the interest of his principal, or is guilty of unfaithfulness, dishonesty, gross misconduct, gross mismanagement, gross unskillfulness, or who fails to follow his principal's instructions, as a general rule forfeits his right to compensation."

This court affirmed the judgment in favor of the agent, because it could "not say upon the record that the [agent] was guilty of such gross misconduct as to forfeit its right to the agreed commissions."

The trial court further relied upon the following language from *Hinkley v. Sagemiller,* 191 Wis. 512, 519, 210 N.W. 839 (1926):

[3] *Arthur Koenig Co. v. Graham Glass Co.*, 170 Wis. 472, 473–474, 175 N.W. 814 (1920); *Hinkley v. Sagemiller,* 191 Wis. 512, 519, 210 N.W. 839 (1926); and *Blum v. Palace Garage Co.,* 214 Wis. 319, 323, 252 N.W. 177 (1933).

"It is one of the fundamental principles of agency that an agent guilty of misconduct and fraud in relation to the transaction of his principal's business is not entitled to compensation for his services."

In *Hinkley*, a suit was brought to remove the general manager of the company from office and to recover misappropriated company funds. The general manager claimed that he was owed compensation for personal services. The trial court concluded that the salary agreed upon and due the general manager for the months during which he was employed and not under suspension was $560.00; that the misappropriation amounted to $760.44; and that the company could have judgment against the general manager in the amount of $200.44.

Although this court reversed the judgment in *Hinkley* on grounds not material here, the opinion allowed the general manager compensation for the period he worked even though he had misappropriated funds. The language quoted by the trial court in the case at bar comes from that part of the opinion holding that the general manager was not entitled to compensation for services during the period of his suspension.[4]

---

[4] The paragraph in the *Hinkley* opinion from which the trial court in the instant case quoted is as follows:

"The court found that the defendant *Sagemiller* had misappropriated $700.44 of the company's funds. Many of these items were misappropriated by the defendant *Sagemiller* for his personal use and benefit. We do not understand upon what theory an officer of a corporation who has been guilty of such gross misconduct as to warrant his removal from office can be held to be entitled to compensation for services during the period of his suspension. It is one of the fundamental principles of agency that an agent guilty of misconduct and fraud in relation to the transaction of his principal's business is not entitled to compensation for his services. *Rogers v. Priest*, 74 Wis. 538, 43 N.W. 510; *Arthur Koenig Co. v. Graham Glass Co.*, 170 Wis. 472, 175 N.W. 814. Certainly the secretary and general manager of a corporation owes to the corporation the utmost fidelity and is required in his dealings with the corporation to exercise the highest good faith. No court holds

The third case upon which the trial court based its decision is *Blum v. Palace Garage Co.*, 214 Wis. 319, 323, 252 N.W. 177 (1934), in which this court stated:

". . . The law respecting the right of an agent or servant to compensation where the agent or servant has been guilty of disloyalty . . . is stated in 2 Restatement of the Law of Agency, p. 1102, sec. 469, as follows:
" 'An agent is entitled to no compensation for conduct which is disobedient or is a breach of his duty of loyalty; such conduct, if constituting a wilful and deliberate breach of his contract of service, disentitles him to compensation for even properly performed services for which no compensation is apportioned.' "

However, this general rule was not applied in *Blum* to require the agent to reimburse the principal for wages paid.[5]

corporate officers to a stricter obligation with respect to dealings between themselves and the corporation which they serve than does this court. It cannot be said, therefore, that a corporate officer who has so far disregarded his duties as to have misappropriated its funds and been guilty of misconduct is entitled to compensation. See 4 Fletcher, Corp. sec. 2766, and cases cited; also 14A Corp. Jur. 139." 191 Wis. at 519.

[5] In *Bockemuhl v. Jordan*, 270 Wis. 14, 70 N.W.2d 26 (1955), an independent sales agent breached the employment contract which provided that the agent, during the term of the contract and for six months thereafter, not solicit orders on behalf of any other firm for services or production which the employer was equipped to handle. The contract further provided that if the agent breached the contract he was not entitled to commissions:

"Any wilful violation of par. (2) by Bockemuhl during the term hereof shall be just cause for immediate termination of this contract by Jordan upon giving notice thereof by registered mail to Bockemuhl; and any violation during the six months following its termination, shall entitle Jordan, as liquidated damages, to retain the commissions otherwise due to Bockemuhl."

The plaintiff-agent brought an action for sales commissions allegedly due him. The trial court held that the contract provided he was not entitled to any sales commission. This court summarized the duties of agents and stated that the plaintiff-agent had

In the *Blum* case, the plaintiff Peter Blum was an employee of Palace Garage Company. In 1927 he had converted funds to his own use, concealed his wrongful acts and destroyed records. He had received a weekly salary during his employment, and he sued for payment of one-third of the annual corporate profits which he claimed he had been promised.

The referee concluded that Blum had forfeited his right to a share of the profits for the year 1927 because he had not met a condition of the agreement for payment of the net profits, namely "that he would diligently and faithfully work for the best interest of the [company] in the management of the business." The employee did not appeal from this part of the referee's decision, and this court did not address the employee's right to a part of the net profits for 1927, the year in which the employee embezzled funds. The company appealed the referee's decision that the employee was entitled to his share of the profits, if any, earned before 1927 and also appealed the referee's calculation of profits.

This court held that Blum could recover his share of profits for the years prior to 1927, but that no profits of the type the parties had agreed to share had existed prior to 1927.

This court granted the company's counterclaim against Blum in the amount of $1,033.20. It appears from the briefs in the *Blum* case that the referee had calculated the amount of $1,033.20 as follows: $903.51 (the amount embezzled); $100.09 (the amount owed on a book ac-

---

violated the contract and the policy of law and the law would not aid him in the recovery of commissions under the contract.

In *General Automotive Mfg. Co. v. Singer*, 19 Wis.2d 528, 120 N.W.2d 659 (1963), the manager-employee had violated the contract and his fiduciary duty by competing with his employer and retaining secret profits. He was required to pay to his employer the secret profits he had earned. There is no indication in the opinion that Singer repaid his salary or commission.

count) ; $30 (rent), for a total of $1,033.60. (The difference of 40 cents is not explained.) Blum was required to repay the amounts embezzled and forfeited his share of profits, but he was not required to reimburse the corporation for the weekly salary he received.

There is no question that the employee in the case at bar, a general manager, owed a fiduciary duty to the employer, breached that duty and is liable for the breach. *General Automotive Mfg. Co. v. Singer,* 19 Wis.2d 528, 533, 120 N.W.2d 659 (1963) ; Restatement of Agency (Second) secs. 387–398 (1957). The issue in this case is whether the employee must, in addition to returning the misappropriated funds, forfeit all right to the compensation he received while he was misappropriating funds. This is a troublesome question.[6]

The general rule appears to be that an agent who is dishonest in the performance of his duties forfeits the right to compensation.[7] This rule is derived from the broader principle of contract law that a party who vio-

[6] For a discussion of this question, *see* Ballantine, *Forfeiture for Breach of Contract,* 5 Minn. L.R. 329 (1921) ; Laube, *The Defaulting Employee-Britton v. Turner Reviewed,* 83 U. Pa. L.R. 825 (1935) ; Williston, *The Defaulting Employee—A Correction,* 84 U. Pa. L.R. 68 (1935) ; Laube, *The Defaulting Employee-No Retraction,* 84 U. Pa. L.R. 69 (1935) ; Laube, *The Right of an Employee Discharged for Cause,* 20 Minn. L.R. 597 (1936) ; Corman, *The Partial Performance Interest of the Defaulting Employee,* 38 Marq. L. Rev. 61, 139 (1954).

[7] For cases applying this rule, *see Harry R. Defler Corp. v. Kleeman,* 19 A.D.2d 396, 243 N.Y.S.2d 930, 938 (1963) ; *aff'd on opinion below,* 19 N.Y.2d 694, 225 N.E.2d 569 (1967) ; *J. C. Peacock, Inc. v. Hasko,* 196 Cal. App.2d 353, 16 Cal. Rept. 518 (1961) ; *Heyman v. Kline,* 344 F. Supp. 1110, 1113 (D. Conn. 1970), *rev'd on other grounds,* 456 F2d 123 (2d Cir. 1972), *cert.* den. 409 U.S. 849 (1972) ; *Wilshire Oil Co. v. Riffe,* 406 F.2d 1061, 1062 (10th Cir. 1969) ; *Herman v. Branch Motor Express Co., Inc.,* 67 Misc.2d 444, 323 N.Y.S.2d 796 (1971).

lates an agreement should not be permitted to recover under the contract. However, these rules are not rigid, inflexible or without exceptions. Calamari, *Contracts,* sec. 11–26 (1970); Williston, *Contracts,* secs. 1017B, 1477 (Jaeger 3d ed. 1970).

Sec. 456 of the Restatement (Second) of Agency (1957) sets forth the liability of the employer to the defaulting employee for compensation[8] as follows:

"Sec. 456. **Revocation for Breach of Contract or Renunciation in Breach of Contract**

"If a principal properly discharges an agent for breach of contract, or the agent wrongfully renounces the employment, the principal is subject to liability to pay to the agent, with a deduction for the loss caused the principal by the breach of contract:

"(a) the agreed compensation for services properly rendered for which the compensation is apportioned in

---

[8] Section 456 "is a special application of the rules stated in the Restatement of Contracts as to the rights of a contracting party who is in default. See especially sec. 357." Comment *a*, sec. 456, Restatement (Second) of Agency (1957).

Section 357 of the Restatement of Contracts (1932), states:

"RESTITUTION IN FAVOR OF A PLAINTIFF WHO IS HIMSELF IN DEFAULT.

"(1) Where the defendant fails or refuses to perform his contract and is justified therein by the plaintiff's own breach of duty or non-performance of a condition, but the plaintiff has rendered a part performance under the contract that is a net benefit to the defendant, the plaintiff can get judgment, except as stated in Subsection (2), for the amount of such benefit in excess of the harm that he has caused to the defendant by his own breach, in no case exceeding a ratable proportion of the agreed compensation, if

"(a) the plaintiff's breach or non-performance is not wilful and deliberate; or

"(b) the defendant, with knowledge that the plaintiff's breach of duty or non-performance of condition has occurred or will thereafter occur, assents to the rendition of the part performance, or accepts the benefit of it, or retains property received although its return in specie is still not unreasonably difficult or injurious.

the contract, whether or not the agent's breach is wilful and deliberate; and

"(b) the value, not exceeding the agreed ratable compensation, of services properly rendered for which the compensation is not apportioned if, but only if, the agent's breach is not wilful and deliberate."

"(2) The plaintiff has no right to compensation for his part performance if it is merely a payment of earnest money, or if the contract provides that it may be retained and it is not so greatly in excess of the defendant's harm that the provision is rejected as imposing a penalty.

"(3) The measure of the defendant's benefit from the plaintiff's part performance is the amount by which he has been enriched as a result of such performance unless the facts are those stated in Subsection (1)(b), in which case it is the price fixed by the contract for such part performance, or, if no price is so fixed, a ratable proportion of the total contract price.

The Comments *d* and *f* to this section state:

"*d.* Even if the plaintiff's non-performance is a breach of his contractual duty for which the defendant has a right to damages, there are many cases in which it is not just to permit the defendant to retain the whole benefit of the plaintiff's part performance without paying anything in return. If the benefit received by the defendant is no more than his harm, he owes nothing to the plaintiff. But if the benefit received is more than the amount of his harm, to let him retain the excess would not only be giving him something for nothing, it would also be making the plaintiff suffer a penalty for his wrong in excess of the compensatory damages that are held to be a fully adequate remedy in actions for wrongful breach.

". . .

"*f.* Even though the plaintiff's breach is wilful and without semblance of excuse, the defendant must restore the excess of benefit over harm if, with knowledge that the breach has occurred or is impending, he assents to the part performance, or retains it or accepts the benefit of it unreasonably. If the part performance is received without such knowledge and is of such a character that it cannot be returned in specie without unreasonable difficulty or sacrifice, it may be retained without making restitution, even though it exceeds the injury. Such is sometimes the case when the part performance has been incorporated with the defendant's land or goods. Doubts in cases of this kind are resolved in favor of the plaintiff, in order to avoid a forfeiture in excess of harm suffered."

The Comments to this section of the Restatement explain apportioned and unapportioned services as follows:

> "*b. Apportioned services.* If an agent is paid a salary apportioned to periods of time, or compensation apportioned to the completion of specified items of work, he is entitled to receive the stipulated compensation for periods or items properly completed before his renunciation or discharge. This is true even if, because of unfaithfulness or insubordination, the agent forfeits his compensation for subsequent periods or items.
>
> "*c. Unapportioned services.* If the agent has rendered services, compensation for which is not apportioned in the contract of service, and his renunciation or other breach of contract is not wilful, he is entitled to an amount equal to the fair value of his services, not exceeding the agreed compensation, minus any damage caused to the principal by his breach of contract. A breach of contract is wilful and deliberate, as those words are herein used, only when the agent, in complete disregard of his contractual obligations, fails to perform or misperforms the promised services and has no substantial moral excuse for so doing, or is guilty of disloyal or grossly insubordinate conduct."

If the agent sues the principal for compensation, sec. 469 of the Restatement (Second) of Agency (1957) provides that the employer may defend the suit by proving disloyalty and insubordination:

> "Sec. 469. **Disloyalty or Insubordination as Defense**
>
> "An agent is entitled to no compensation for conduct which is disobedient or which is a breach of his duty of loyalty; if such conduct constitutes a wilful and deliberate breach of his contract of service, he is not entitled to compensation even for properly performed services for which no compensation is apportioned."

Comment *e* to sec. 469 states that if the principal in ignorance of the agent's faulty conduct pays the agent, the principal can maintain an action to recover the amount.

In addition, because agents and trustees are classed together for many purposes as fiduciaries, it is instructive to look at the Restatement (Second) of Trusts (1957) which speaks to the effect of a breach of trust on the trustee's compensation.[9] Sec. 243 provides:

"If the trustee commits a breach of trust, the court may in its discretion deny him all compensation or allow him a reduced compensation or allow him full compensation."

The Comment to this section explains that the trustee is liable for any loss occasioned by his breach and that the reduction or denial of compensation is not in the nature of an additional penalty for the breach but is based on the fact that the trustee has not rendered or has not properly rendered the services for which compensation is given. Comments *c* and *d* discuss the discretion of the court in determining compensation and describe the factors the court should consider in reducing or denying the trustee compensation.

*"c. The discretion of the court.* It is within the discretion of the court whether the trustee who has committed a breach of trust shall receive full compensation or whether his compensation shall be reduced or denied. In the exercise of the court's discretion the following factors are considered: (1) whether the trustee acted in good faith or not; (2) whether the breach of trust was intentional or negligent or without fault; (3) whether the breach of trust related to the management of the

[9] Although agency resembles trusteeship in that it is a fiduciary relationship, there are differences between the two, including that the principal's rights were developed and enforced by courts of law, while the beneficiary's rights were fostered by chancery. The principal sets the agent's compensation; the settlor of the trust may or may not set the trustee's fees, and trustee's fees are generally subject to court control. Bogert & Bogert, *Law of Trusts*, Sec. 16 (5th Ed. 1973).

whole trust or related only to a part of the trust property; (4) whether or not the breach of trust occasioned any loss and whether if there has been a loss it has been made good by the trustee; (5) whether the trustee's services were of value to the trust.

"*d. Denial of compensation.* If the trustee repudiates the trust or misappropriates the trust property or if he intentionally or negligently mismanages the whole trust, he will ordinarily be allowed no compensation."

It is clear that the agent is liable for damages in the event of a breach of duty and that any losses he caused may be offset against any claim he may have for compensation. However we do not adopt the rigid, mechanical rule urged by the employer that compensation is automatically denied to the agent during the period in which he has committed a wilfull and significant breach of duty of loyalty.

The employer relies on *Vendo Co. v. Stover,* 58 Ill.2d 289, 321 N.E.2d 1, 10 (1974), in which the Illinois Supreme Court did not limit an employer to recovery of profits and required an employee to forfeit compensation, explaining.

". . . The limitation on a plaintiff's recovery proposed by defendants [namely limiting plaintiff's recovery to profits] would mean that a fiduciary could violate his duty without incurring any risk. For if his misconduct were discovered the most that he could lose would be the profit gained from his illegal venture; the law would have operated only to restore him to the same position he would have been in had he faithfully performed his duties."

*See also Grace v. E. J. Kozin Co.,* 538 F.2d 170, 175 (7th Cir. 1976), in which the court concluded that in the event an employee breaches his duty of loyalty, compensation should be forfeited as a deterrent to wrongful conduct. We do not adopt the rationale of these cases.

We conclude that whether the agent should be denied all or any part of his compensation during the period in which he breached his duty of loyalty depends on consideration and evaluation of all the circumstances, including the nature of the employee's services and breach of duty; the detriment to the employee if he is deprived of compensation; loss, expenses and inconvenience caused to the employer by the employee's breach; and the value to the employer of the services properly rendered by the employee.[10] *Cf. Town Plan & Eng. Assoc. Inc. v. Amesbury Spec. Co. Inc.*, 369 Mass. 737, 342 N.E.2d 706, 711 (1971).

Because the trial court in the case at bar incorrectly concluded that it had no alternative but to deny the employee the entire compensation for the entire period during which he misappropriated funds, we reverse the judgment and remand the matter to the trial court to determine whether the employee should be denied all or

[10] *See Richardson v. Blue Grass Mining Co.*, 29 F. Supp. 658 (E.D. Ky. 1939), 127 F.2d 291 (6th Cir.), *cert. denied,* 317 U.S. 639 (1942); Fletcher, *Cyclopedia Corporations*, sec. 2145 (Perm. ed. 1976).

*Cf. Georgiades v. Glickman*, 272 Wis. 257, 273, 75 N.W.2d 573 (1956), in which the employee (plaintiff) breached his contract by taking five weeks of vacation instead of the permissible three weeks. The plaintiff was fired before the end of his contract term and sued for compensation from the date of firing to the end of the contract period. This court upheld the trial court's determination that the plaintiff could not recover his weekly salary but held that he was entitled to recover additional compensation under the contract based upon a share of the partnership net income. This court said "We approve of the trial court's determination in such respect because if plaintiff were to be denied such additional compensation the defendants would be thereby unjustly enriched at the expense of the plaintiff. Such determination is in accord with Restatement, 2 Contracts, p. 623, sec. 357(1), and 5 Williston, Contracts (rev. ed.), p. 4140 *et seq.*, secs. 1482, 1483. See also *Valentine v. Patrick Warren Construction Co.* (1953), 263 Wis. 143, 164, 165, 56 N.W. (2d) 860."

any part of his compensation upon consideration and evaluation of all the circumstances of the case at bar. Upon review of the stipulation the trial court may conclude that there is an inadequate record upon which to base a decision, and the trial court may ask for the taking of testimony or for an additional stipulation.

*By the Court.*—Judgment reversed and cause remanded for proceedings not inconsistent with this opinion.

The following memorandum was filed April 15, 1980.

PER CURIAM *(on motion for reconsideration).* In our original opinion it is stated:

"We conclude that whether the agent should be denied all or any part of his compensation during the period in which he breached his duty of loyalty depends on consideration and evaluation of all the circumstances, including the nature of the employee's services and breach of duty; the detriment to the employee if he is deprived of compensation; loss, expenses and inconvenience caused to the employer by the employee's breach; and the value to the employer of the services properly rendered by the employee.[10] *Cf. Town Plan & Eng. Assoc. Inc. v. Amesbury Spec. Co. Inc.,* 369 Mass. 737, 342 N.E.2d 706, 711 (1971)."

This language is withdrawn and in its place the following is substituted:

We conclude that whether the agent should be denied all or any part of his compensation during the period in which he breached his duty of loyalty depends on consideration and evaluation of the relevant circumstances with a view to avoiding unjust enrichment of or unjust deprivation to either the employer or employee. The circumstances to be considered include, but are not limited to, the nature and extent of the employee's services and breach of duty; the loss, expenses and inconvenience caused to the employer by the employee's breach; and the value to the employer of the services properly rendered by the employee.[10] *Cf. Town Plan & Eng. Assoc. Inc. v. Amesbury Spec. Co. Inc.,* 369 Mass.

737, 342 N.E.2d 706, 711 (1971). A consideration of these and other relevant factors, we believe, is consistent with established principles of equity and justice.

The burden of proof to establish a right of the employer to recover compensation paid to the employee as a result of the employee's breach of duty owed to the employer is upon the employer. The burden to go forward with evidence to establish mitigating circumstances which would limit the employer's recovery is upon the employee.

Motion for reconsideration denied.