CENTURY CAPITAL GROUP, a Wisconsin partnership, Plaintiff-Appellant,

v.

Lorraine BARTHELS, Robert Bukowski, Ronald J. Chinnock Revocable Trust, Margaret S. Dierks, Jane Y. Eisch, Jon R. Fowler, William Fowler, Richard Gore, Lila E. Graffen, Mr. and Mrs. Gerald Hellwig, Eleanor Howard, Walker Jensen, Mr. and Mrs. James Kita, T.A. Kooyumjian, Lang Oil Profit Plan #3239, Lois M. Lemenager, Rosemary H. Morgan, Radford Company Incentive Savings Plan, Richard Reines, Emily Ross Taylor Living Trust, Mr. and Mrs. Arthur Tigert and Eugene Troxell IRA Rollover Account, Defendants-Respondents.

Spencer H. LEMENAGER, T.A. Kooyumjian, Richard Gore, Walker A. Jensen, Lois Lemenager, Emily Ross Taylor, Eleanor L. Howard, Mr. and Mrs. Gerald E. Hellwig, First Wisconsin National Bank of Oshkosh, as trustee of the Radford Company, an employee's trust, Lila E. Graffen, Richard W. Reins, Margaret S. Dierks, Eugene T. Troxell, James S. Kita, Katherine Kita, Arthur Tigert, Wolga Tigert, Lorraine C. Barthels, Jon R. Fowler, James H. Lang, Rosemary Morgan, Robert H. Bukowski and William E. Fowler, Plaintiffs-Respondents,

v.

CENTURY CAPITAL GROUP and Mark Vandeyacht, Defendants-Appellants.

806

Court of Appeals

*No. 94–1159. Submitted on briefs March 30, 1995.—Decided September 13, 1995.*

(Also reported in 539 N.W.2d 691.)

808

On behalf of the plaintiff-appellant and defend-
ants-appellants, the cause was submitted on the briefs

of *Jeffrey B. Bartell, Donald K. Schott and Mitchell S. Moser* of *Quarles & Brady* of Madison.

On behalf of the defendants-respondents and plaintiffs-respondents, the cause was submitted on the brief of *Charles J. Hertel* of *Dempsey, Magnusen, Williamson & Lampe* of Oshkosh.

Before Anderson, P.J., Nettesheim and Snyder, JJ.

SNYDER, J. Century Capital Group (CCG) appeals from a judgment holding that it breached its fiduciary duty to its limited partners. CCG maintains that once the limited partners voted for its removal as general partner, it had no fiduciary obligation to effectuate its own removal. We disagree. CCG also disputes the circuit court's disallowance of certain fees and charges which were assessed after the breach as payment for CCG's continuing management as general partner. We conclude that the setoffs determined by the circuit court were proper. Accordingly, we affirm.

Century Warehouse Fund III Limited Partnership (Partnership) is a Wisconsin limited partnership created in 1983. The Partnership has two general partners, CCG, a Wisconsin general partnership, and Mark Vandeyacht. In 1983, CCG had two general partners, Wayne Chaney and J. Peter Jungbacker. Subsequently, Century Capital Group, Ltd., a Wisconsin corporation of which Chaney and Jungbacker are principles, became an additional general partner of CCG.

When the partnership was created, the respondents (Limited Partners) made capital contributions of $700,000. With the exception of Spencer H. Lemenager, who holds proxies, the Limited Partners hold in excess of 90% of the partnership units.

810

Vandeyacht and CCG made capital contributions of $50 each. The primary asset of the partnership is a 237,500 square foot warehouse in Augusta, Georgia. The only tenant of the warehouse is Distribution Specialists, Inc. (DSI), a Wisconsin corporation which lists Vandeyacht as one of the principals. The warehouse was utilized by DSI as a public warehouse and was sublet to entities called "endusers," primarily Kimberly-Clark and Proctor & Gamble.

Beginning in 1988, DSI became delinquent on its rental obligations, and financial statements prepared for the Partnership raised the issue of whether the Partnership could continue to carry on its business in light of the rental arrearages. A meeting of the Partnership took place on February 25, 1989, to address the various issues which had arisen. Based on disclosures made at that meeting, the Limited Partners had serious doubts about CCG's ability to continue to handle the affairs of the Partnership. As a result, in March 1989, Lemenager was given proxies by the Limited Partners with directions to: (1) effect removal of CCG as a general partner; and (2) substitute Lemenager's company, Equity, Inc., as replacement general partner. These actions were in accordance with § 7.6 of the partnership agreement, entitled "Removal of the General Partner."[1]

---

[1] The partnership agreement was drafted by CCG and provided in relevant part:

> Any General Partner may be removed and replaced upon (a) the written consent of Limited Partners owning a majority of the Partnership Units; (b) the substitution of a new General Partner(s) . . .; (c) the release of the General Partner(s) from all material guarantees and other obligations (except obligations arising from a General Partner's negligence or breach of this Agreement) . . .; and (d) the payment in cash . . . to the General Partner of the amount to which he would be entitled if the Partnership were actually dis-

After delivery of the proxies, Lemenager and CCG reached an agreement that the value of CCG's interest would be based upon an appraisal of the Augusta warehouse. It was also agreed that CCG could designate the appraiser, Lemenager would be obligated to pay for the appraisal, and the parties were to be bound by the appraisal figures. CCG designated William Hollingsworth, who assigned a value of $4,400,000 to the warehouse. Instead of disclosing the results of the appraisal to Lemenager, Jungbacker met with Hollingsworth, questioning his valuation of the warehouse and claiming that certain overlooked factors should result in a higher appraisal. Hollingsworth refused to change his appraisal. The final meeting between Lemenager and CCG was in August 1989. Although the Hollingsworth appraisal was completed prior to that meeting, CCG did not divulge that information. Since August 1989, CCG has taken no action to conclude the removal process, has continued to conduct the affairs of the partnership as if the Limited Partners had not voted to remove it, and this lawsuit commenced.

The first issue on appeal is whether CCG breached its fiduciary duty as a general partner to the Limited Partners. The existence of a duty presents an issue of law. *Lisa's Style Shop v. Hagan Ins. Agency,* 181 Wis. 2d 565, 572, 511 N.W.2d 849, 852 (1994). Since neither

> solved as of the date of removal and cash distributed in accordance with Article V. For purposes of this paragraph, the amount of sales proceeds received upon liquidation shall be deemed the appraised value of all Partnership assets . . ..

The trial court held that CCG was bound by this agreement, and any interpretation of the agreement must be against CCG as drafter and in favor of the Limited Partners.

party disputes the trial court's findings of fact, our review is limited to issues of law, which we review de novo. *See First Nat'l Leasing Corp. v. City of Madison,* 81 Wis. 2d 205, 208, 260 N.W.2d 251, 253 (1977).

Wisconsin has codified the fiduciary obligations of partners in §§ 179.33(1) and 178.18(1), STATS. Section 179.33(1) of the Uniform Limited Partnership Act states that a general partner in a limited partnership is subject to the same restrictions as a partner in a partnership without limited partners. Wisconsin's Uniform Partnership Act, § 178.18, is entitled "Partner accountable as fiduciary" and states in relevant part:

> **(1)** Every partner must account to the partnership for any benefit, and hold as trustee for it any profits derived by him or her without the consent of the other partners from any transaction connected with the formation, *conduct,* or liquidation of the partnership or from any use by him or her of partnership property. [Emphasis added.]

If a statute is unambiguous, a court must give statutory language its ordinary and accepted meaning. *State ex rel. Nekoosa Papers, Inc. v. Board of Review,* 114 Wis. 2d 14, 17, 336 N.W.2d 384, 385 (Ct. App. 1983). The language of the statute itself is the primary source of statutory construction. *Seep v. State Personnel Comm'n,* 140 Wis. 2d 32, 41, 409 N.W.2d 142, 145 (Ct. App. 1987).

Section 178.18(1), STATS., plainly states that the fiduciary obligations of a partner encompass the formation, conduct and liquidation of the partnership. CCG has acknowledged that it owed a fiduciary duty to the Limited Partners with respect to the conduct of the Partnership. In the partnership agreement drafted by

813

CCG, the right to remove a general partner is given to the Limited Partners. Such removal necessarily impacts the ongoing conduct of the partnership. Therefore, it is disingenuous for CCG to claim no duty with regard to its own removal as general partner.

The court found that CCG owed a fiduciary duty to the Limited Partners to fulfill the terms and conditions of the partnership agreement. In breach of that duty, the court found that CCG had stonewalled all efforts of the Limited Partners to replace it as general partner. The attempt to cause Hollingsworth to change his appraisal of the Augusta warehouse and its concealment were two examples. After Lemenager's initial attempt to remove the general partner, CCG made a retroactive change in the method of calculating the allowable charges of asset management fees. This was done without notification to the Limited Partners and has resulted in charges to the Limited Partners in excess of $350,000.[2]

There is ample evidence that CCG has breached its fiduciary duty to the Limited Partners before, during and after the proxies were filed and has acted in its own best interests. Accordingly, we affirm the trial court.

---

[2] Under the terms of the partnership agreement, the amount of the asset management fee was a percentage of the "book value" of the Partnership's assets. CCG reinterpreted the agreement in June 1992 and determined that the fees should be based on the "market value" of assets. This reinterpretation resulted in retroactive assessments of $75,364. Using the new formula for calculations, CCG has continued to assess fees for its management of the Partnership. The total of all fees assessed since 1989 is $358,799.

The second issue raised is whether the trial court was correct in disallowing CCG the fees charged after the Limited Partners voted to remove it. The question of whether to allow compensation to a fiduciary rests within the discretion of the trial court. *Hartford Elevator, Inc. v. Lauer*, 94 Wis. 2d 571, 584, 289 N.W.2d 280, 287 (1980). Any determination by the trial court will not be overturned absent a misuse of discretion. *United Fire & Casualty Co. v. Kleppe*, 174 Wis. 2d 637, 640, 498 N.W.2d 226, 227 (1993). It has been recognized that it is not a misuse of discretion to disallow all fees, even if there is no bad faith or dereliction of duty found. *See Richards v. Barry*, 39 Wis. 2d 437, 444, 159 N.W.2d 660, 663 (1968).

The general rule is that an agent who is dishonest forfeits his or her right to compensation for those duties. *Hartford Elevator,* 94 Wis. 2d at 580, 289 N.W.2d at 285. In determining the compensation issue, the court may consider whether the breach was intentional and whether it was responsible for a loss. *Id.* at 584-85, 289 N.W.2d at 287. A fiduciary is liable for damages in the event of a breach, and any losses caused may be offset against any claim for compensation. *See id.* at 585, 289 N.W.2d at 287.

It is not necessary to restate the various wrongful acts that CCG committed. The findings of fact make it clear that appropriate grounds existed to disallow all fees. The trial court found a breach of good faith, that CCG engaged in deceitful behavior and that it acted for its own interests. CCG's profits after the breach are undisputed. If CCG had fulfilled its fiduciary obligations and removed itself as a general partner as it was

815

obligated to do, it would not have received the disallowed fees.

Accordingly, we uphold the findings of the trial court as to CCG's breach of fiduciary duty and conclude that the resulting disallowance of fees and compensation was a proper exercise of discretion.

*By the Court.*—Judgment affirmed.