Wisconsin Aviation Four Lakes, Inc., Plaintiff-Appellant,
v.
Frank W. Berryman, Defendant-Respondent.
No. 03-1029.
Court of Appeals of Wisconsin.
Opinion Filed: July 8, 2004.
Before Deininger, P.J., Vergeront and Higginbotham, JJ.
¶ 1 DEININGER, P.J.
Wisconsin Aviation Four Lakes, Inc. appeals an order that dismissed its claim against Frank Berryman for payment of a bill for aircraft inspection and related services it rendered to Berryman. The trial court disallowed Wisconsin Aviation's claim because it found that an estimate for repair work that followed the inspection was "not worth the money that is charged." Wisconsin Aviation claims the trial court erred in dismissing its claim for the inspection and related services it performed because Berryman was contractually bound to pay for the work it actually performed, notwithstanding the alleged unreasonableness of its estimate for additional work on Berryman's airplane. We agree and reverse the appealed order in part. We direct that, on remand, judgment be entered against Berryman in the amount of $561.68, plus allowable costs.

BACKGROUND
¶ 2 Berryman owns an airplane that he stored with Wisconsin Aviation. After about two years of outside storage, Berryman asked Wisconsin Aviation to perform an "annual inspection" of the plane, as is apparently required by the Federal Aviation Administration in order for a plane to be certified for flight. Berryman also asked Wisconsin Aviation to remove the seats from the aircraft. Wisconsin Aviation began the inspection of the plane, performed routine maintenance on the engine in order to start it as required for the inspection, and removed its seats.
¶ 3 A Wisconsin Aviation employee testified that, after beginning the annual inspection and finding numerous problems with the aircraft that would require repairs, he stopped the inspection. A maintenance manager prepared an estimate of the cost of repairing the plane. He then met with Berryman and went over the estimate with him, discussing the problems found and the action required or recommended to repair each problem. The total amount of the estimate was $18,624.79. After receiving the estimate, Berryman told Wisconsin Aviation to stop all work on the plane while he considered his options, explaining that he would give further instructions regarding the plane in the future.
¶ 4 Berryman then contacted two other aircraft repair facilities who provided estimates for repairing the plane so that it could be certified to fly. He hired one of them, Seagull Aviation, to do the necessary work. Seagull Aviation estimated that it would cost $2,639.00 to complete an annual inspection and repair Berryman's plane. Most of the minor repairs identified by Wisconsin Aviation were performed by Seagull, but Seagull's service manager did not feel that four major repairs cited by Wisconsin Aviation were necessary. (Seagull ultimately billed Berryman more than $17,000 for all work it performed on his plane, most of which was for cosmetic and other improvements approved by Berryman that were not included in either Wisconsin Aviation's or Seagull's repair estimates.)
¶ 5 Wisconsin Aviation billed Berryman $385 for the partial inspection (8.75 hours @ $44 per hour), $77 for the work in getting the engine started (1.75 hours), and $70.40 for removing the seats (1.6 hours), plus sales tax, for a total invoice of $561.68. Berryman did not pay, and Wisconsin Aviation sued him in small claims court for $904.17.[1] Berryman counterclaimed, requesting damages in excess of $5,000 for intentional misrepresentation, negligent performance of inspection, and breach of contract. Because the counterclaim exceeded the small claims jurisdictional limit, the case ultimately proceeded to a bench trial before the Dane County Circuit Court.
¶ 6 The vast majority of the trial testimony, exhibits, and argument focused on Berryman's counterclaims and whether Wisconsin Aviation had or had not correctly identified four major repair items allegedly needed to render the plane airworthy. Berryman acknowledged that he had requested Wisconsin Aviation to remove the seats and conduct the inspection, and that he knew that the inspection would involve getting the plane's engine started. His counsel argued, however, that Berryman should not have to pay for the work that was done because of Wisconsin Aviation's intentional or negligent inclusion in the repair estimate of the four major items that Berryman maintained were not required to be done, which he asserted to be "70% of the ... estimate."[2]
¶ 7 In an oral ruling following post-trial briefing, the trial court first determined that there "just isn't enough evidence for me to find that there is some sort of an intentional fraudulent misrepresentation on the part of Wisconsin Aviation." It reached a similar conclusion regarding Wisconsin Aviation's alleged negligence in preparing the estimate of repairs. The court found, however, that the estimate was unreasonably high in that "a lot less than that [$18,000] would have gotten the job done," and concluded that "I just can't find that on an implied breach of contract claim that the estimate was worth the $900 [see footnote 1] that is being charged here," explaining further:
[G]iven what work actually needed to be done and the number of big dollar things that apparently if they might have been advisable they certainly weren't necessary, and the implication of the estimate is that they were necessary, I find that that estimate was not worth the money that is charged, and I decline to enforce the plaintiff's demand for $904.17.
¶ 8 Based on these findings and conclusions, the court dismissed Wisconsin Aviation's claim against Berryman, as well as Berryman's counterclaims. Both parties moved for reconsideration, which the court denied. Wisconsin Aviation appeals the order denying reconsideration of the dismissal of its claim.[3]

ANALYSIS
¶ 9 As we have described, Berryman concedes that the invoiced work was performed at his request, and he raises no issue as to the reasonableness of Wisconsin Aviation's charges for commencing the inspection, starting the plane's engine and removing its seats. He argues, however, that Wisconsin Aviation did not "substantially perform" the annual inspection he requested because an annual inspection encompasses not only inspection services, but the making of necessary repairs and "certification for a return to service." He also maintains that the court correctly found that the Wisconsin Aviation repair estimate was grossly inflated, and therefore properly concluded that Wisconsin Aviation had not substantially performed its contract with him.
¶ 10 Wisconsin Aviation, of course, takes issue with the court's findings regarding the excessiveness of its repair estimate, but more to the point, argues that the accuracy of the estimate is irrelevant to the issue of whether it is entitled to be paid for the services performed at Berryman's request. Wisconsin Aviation maintains that its estimate was merely a "recommendation" of work it believed needed to be done in order for the plane to safely return to the air, which Berryman was free to reject, as ultimately he did. It points out that Berryman testified at trial that he told Wisconsin Aviation to "stop all work" on the plane and that he did not "want to spend any more money" on the plane while he considered his "options." In Wisconsin Aviation's view, the fact that Berryman rejected the repair work it recommended and found a competitor willing to do fewer repairs and certify the plane for flight does not justify Berryman's nonpayment for the inspection and other services he requested the company to perform on his plane.
¶ 11 Because there is no cross-appeal, we will accept the trial court's findings and conclusions that Berryman established no intentional misrepresentation or negligence on the part of Wisconsin Aviation. Although it is challenged, we will also accept for purposes of our analysis the trial court's finding that the estimate for repairs provided by Wisconsin Aviation included four major repair items that ultimately were not necessary in order to render Berryman's plane flight worthy. The question thus becomes whether the court correctly concluded, given this finding, that Wisconsin Aviation breached its contract with Berryman to conduct an annual inspection of his plane and remove its seats. We find no legal basis for denying Wisconsin Aviation payment for work it actually performed at Berryman's request, and thus conclude that the trial court erred in dismissing its claim.
¶ 12 As we have noted, Berryman contends that the trial court's decision rests, at least implicitly, on a conclusion that Wisconsin Aviation failed to substantially perform its contract with him. Berryman principally relies on Hartford Elevator, Inc. v. Lauer, 94 Wis. 2d 571, 289 N.W.2d 280 (1980), which he claims establishes a four-part test for determining whether service providers are entitled to be paid for their work. The passage in Hartford Elevator that Berryman cites reads as follows:
We conclude that whether the agent should be denied all or any part of his compensation during the period in which he breached his duty of loyalty depends on consideration and evaluation of the relevant circumstances with a view to avoiding unjust enrichment of or unjust deprivation to either the employer or employee. The circumstances to be considered include, but are not limited to, the nature and extent of the employee's services and breach of duty; the loss, expenses and inconvenience caused to the employer by the employee's breach; and the value to the employer of the services properly rendered by the employee. A consideration of these and other relevant factors, we believe, is consistent with established principles of equity and justice.
Id. at 586 (citation and footnote omitted).
¶ 13 As the quoted passage itself demonstrates, Hartford Elevator involved a suit between an employer and its former employee, the law of agency and a claim based on the breach of the duty of loyalty. Thus, we conclude that the case provides no assistance whatsoever in resolving the present dispute between two independent contracting parties.[4] Berryman is on firmer ground when he cites Plante v. Jacobs, 10 Wis. 2d 567, 103 N.W.2d (1960), which was a contract dispute between a homebuilder and purchaser. Unhappy with some of the work done on the house, the purchaser refused to pay the balance of the contract price and the builder sued. Id. at 569. The supreme court affirmed the trial court's conclusion that the contract had been substantially performed, that is, that the "performance me[t] the essential purpose of the contract." Id. at 570.
¶ 14 Berryman maintains that Wisconsin Aviation, by "finding defects which did not exist thwarted the completion of the contract," whose "essential purpose" he asserts "was to inspect, repair as necessary and certify the plane for flight." And, because Berryman found it necessary to have the truly necessary repairs done elsewhere in order to get his plane back in service, he asserts that the essential purpose of his contract with Wisconsin Aviation was not met. The difficulty with Berryman's argument is his insistence that what he wanted Wisconsin Aviation to do when he authorized it to perform an "annual inspection" on his plane was not simply to inspect the plane and note defects requiring repair or further inspection, but also to perform all necessary repairs and certify the plane for flight. The trial court made no finding that the parties' contract was so comprehensive or all-inclusive, and Berryman's actions in ordering work stopped and removing his plane to another repair facility strongly suggest that he did not feel bound by his request for an annual inspection to have Wisconsin Aviation complete the repairs on his plane.
¶ 15 Moreover, we have searched the record and find no indication that the trial court's ruling was based on an implicit determination that the "essential purpose" of the parties' contract went beyond the performance of inspection services and related work (starting the engine, removing seats) to also include the completion of all necessary repairs and certification of the plane for flight. Neither Berryman's trial brief nor his post-trial letter brief, or his pre-decision oral argument or his brief on reconsideration, articulates such a theory. By the same token, neither the trial court's oral ruling nor its written decision on reconsideration suggests that it found the scope of the services Berryman asked Wisconsin Aviation to perform were as expansive as Berryman argues on appeal.[5]
¶ 16 We will ordinarily permit a respondent to advance new or alternative theories on appeal that would permit us to sustain the result the trial court reached. See State v. Darcy N.K., 218 Wis. 2d 640, 651, 581 N.W.2d 567 (Ct. App. 1998). Here, however, absent specific findings from the trial court as to the scope of Wisconsin Aviation's undertaking, we are unable to assess the merit of Berryman's substantial performance argument. We also note that the issue of substantial performance most often arises in disputes regarding fixed-price contracts, typically for construction of improvements to real estate, where the question is whether a party's performance of the contract was such as to entitle it to full payment of the contract price, or something less. See, e.g., Kreyer v. Driscoll, 39 Wis. 2d 540, 159 N.W.2d 680 (1968); RESTATEMENT (SECOND) OF CONTRACTS § 237 cmt. d (1981). Here, Wisconsin Aviation is not seeking to collect the balance due on a fixed-price contract, but to be compensated on a time and materials basis for work it was asked to do.
¶ 17 Finally, we observe that the doctrine of substantial performance, even if we deemed it applicable to the record before us, would not act as a complete bar to Wisconsin Aviation's recovery of the payment it seeks. Even if Wisconsin Aviation did not substantially perform its contract with Berryman, it could still obtain restitution for its partial performance that was of net benefit to Berryman. See Kreyer, 39 Wis. 2d at 546-47; RESTATEMENT (SECOND) OF CONTRACTS §§ 374(1) and 371 (1981) (providing that a "party in breach is entitled to restitution for any benefit that he has conferred by way of part performance," and this may be measured by "what it would have cost [the non-breaching party] to obtain it from a person in the claimant's position"). There can be little dispute that Berryman benefited from the removal of the seats that he requested, and from Wisconsin Aviation's work in getting the plane's engine to start, which was necessary for the performance of the inspection regardless of who completed it. By the same token, the inspection identified some twenty or more discrepancies that were ultimately addressed or corrected by Seagull. Even though Seagull (and the trial court) concluded that four major items identified by Wisconsin Aviation were either unnecessary or could be accomplished at much less cost, Berryman arguably derived some benefit from having more than one estimate for repairs that he could compare and choose from, and the trial court flatly rejected Berryman's claim that he incurred additional costs or damages on account of Wisconsin Aviation's inspection and repair estimate.[6]
¶ 18 Thus, we return to the question with which we began this analysis: Does the fact that Wisconsin Aviation gave Berryman an estimate that included several costly repairs that ultimately were not needed in order to return Berryman's plane to service provide a legal basis for denying Wisconsin Aviation payment for commencing the annual inspection of Berryman's plane and removing its seats? Neither the trial court's decision nor Berryman's brief on appeal have identified a legal theory or rationale that would permit us to affirm, and we have found none. We conclude that, just because a customer elects to reject a service provider's repair estimate and to have further work performed elsewhere at lesser cost, the customer is not absolved of liability for payment for services the provider actually performed at the customer's request.[7]
¶ 19 We also conclude that it would be poor public policy to deny Wisconsin Aviation a recovery on the present facts. Denying Wisconsin Aviation payment for the work it performed before giving Berryman the opportunity to pursue a more reasonable alternative to meet his needs would not further the interests of either service providers or their customers. Wisconsin Aviation employees testified that, when they noted a large number of discrepancies, some of them potentially costly, they thought it prudent to contact Berryman and inform him of their observations before proceeding further. This was a reasonable and responsible business practice on the part of Wisconsin Aviation, and one to be encouraged, not discouraged by depriving Wisconsin Aviation of its concededly reasonable charges for the services it performed at Berryman's request. Adopting Berryman's position in this appeal would, we fear, create an incentive for service providers to forego giving their customers appropriate and timely opportunities to "take their business elsewhere."[8]

CONCLUSION
¶ 20 For the reasons discussed above, we reverse the appealed order in part and remand for entry of judgment against Berryman for $561.68, plus allowable costs.[9] The remainder of the appealed order, dismissing Berryman's counterclaims in their entirety, is not affected by this appeal.
By the Court.Order reversed in part; cause remanded with directions.
NOTES
[1] The statement attached to the small claims complaint includes additional items, most of which appear to be monthly assessments of interest, as well as three unexplained charges of $47.95 each. No evidence in the record, however, substantiates any basis for charges to Berryman beyond the $561.68 set forth in an invoice dated April 13, 1999. Wisconsin Aviation's counsel relied on that document in his arguments, and, in a brief in support of Wisconsin Aviation's motion for reconsideration, counsel seems to concede that only $561.68 was established as due. After reiterating the invoiced charges, counsel states: "There were no other charges. (Note: plaintiff's complaint included hangar rental and interest due)."
[2] In a brief in opposition to Wisconsin Aviation's motion for reconsideration, Berryman's counsel informed the court as follows:

Further ... [the invoice of April 13, 1999] relate[s] to the plaintiff's claim that work was done and a bill was sent to the defendant. These issues were not contested. The case turned on the defendant's affirmative defense that the work done and conclusions offered by the plaintiff to the defendant were wrong and by implication constituted a failure to properly provide the service that was contracted for.
(Emphasis added.)
[3] Berryman initially filed a cross-appeal of the dismissal of his counterclaims but voluntarily dismissed it.
[4] We note as well that, even if we were to attempt to apply the Hartford Elevator holding to the present facts, the case might not benefit Berryman's position as he asserts. The supreme court in Hartford Elevator distinguished or disavowed precedents that suggested "an agent who is dishonest in the performance of his duties forfeits the right to compensation," which the court concluded "derived from the broader principle of contract law that a party who violates an agreement should not be permitted to recover under the contract," a principle that might be more germane to the present dispute. Hartford Elevator, Inc. v. Lauer, 94 Wis. 2d 571, 580, 289 N.W.2d 280 (1980). The court refused, however, to "adopt the rigid, mechanical rule" that would deny an employee or agent all compensation during a period in which a "wilfull and significant breach of duty of loyalty" is committed, instead opting for a case-by-case, facts and circumstances approach, as quoted above. Id. at 585-86. If the four Hartford Elevator factors were applicable here, at least the first (nature of the breach) and the last (value of services properly rendered) arguably favor Wisconsin Aviation. The trial court found Wisconsin Aviation had neither made any intentional misrepresentations nor performed a negligent inspection, and there is no dispute as to the reasonableness of the charges Wisconsin Aviation billed for the work it actually performed on Berryman's plane at his request.
[5] Berryman's trial counsel acknowledged that the court's denial of Wisconsin Aviation's claim was based on something other than Wisconsin Aviation's failure to perform a contract that included repairing and certifying the aircraft for flight. Counsel described the trial court's oral ruling in Berryman's brief on reconsideration as follows:

[T]he Court did not make specific findings with respect to any element of the plaintiff's burden of proof. The Court did address the plaintiff's claim for damages by finding that the Court could not award damages to the plaintiff because the plaintiff has called for repairs to the plane for defects that did not exist. Further, that the plaintiff's call for repairs was many thousands of dollars beyond that which was actually necessary to return the plane to service. The Court did not characterize in legal terms that finding but did conclude that the plaintiff's actions were a bar to its own recovery. In its written order denying both parties' motions for reconsideration, the court did not shed further light on its rationale for denying Wisconsin Aviation's claim.
[6] In its decision on reconsideration, the court reiterated that "it was clear that the defendant's aircraft needed significant repair when it was placed in the custody of plaintiff. The aircraft was going to need significant repair from some source and, at trial, it was not sufficiently proven that the defendant sustained additional damage based upon the actions of the plaintiff."
[7] Berryman makes no claim that he believed that he would not be billed for the inspection and other work Wisconsin Aviation performed before providing him its estimate. He testified on cross-examination that he understood that he would be billed for the inspection and other services he requested, including starting the engine and removing seats:

Q So you brought the airplane. You spoke with the representatives of Wisconsin Aviation, and you made a request, did you not?
A Correct.
Q And what did you make to them?
A To have an annual inspection.
Q And they agreed to undertake this inspection?
A Yes.
Q Was it understood by you and by a representative of Wisconsin Aviation that this would not be gratuitous, that they would charge you for what they were doing?
A Yes. Certainly.
Q And you expected to be charged?
A Yes.
....
A Well, certainly I knew that in order to complete an annual inspection the plane would have to be run and started and examined in various mechanical ways.
Q And you asked them to remove the seats?
A Yes.
[8] Based on Berryman's response to the estimate and his subsequent actions, we strongly suspect that, notwithstanding his assertion on appeal that his contract with Wisconsin Aviation included having it perform necessary repairs to the plane and certifying it for flight, had Wisconsin Aviation performed the work it identified in its estimate and then sought to collect $18,000 from Berryman for repairing his plane and certifying it for service, Berryman would have strenuously objected that, in authorizing an inspection of his plane, he had not authorized repairs of that magnitude to be performed.
[9] As we have explained, see ¶5 and footnote 1, the evidence at trial substantiates Wisconsin Aviation's claim for only $561.68, notwithstanding its complaint alleging a larger sum to be due.